## Arathema Goodwin v. Daniel Burns.—Charles Scheurmann v. Daniel Burns et al.

*Practice in Chancery: Setting aside sales.* A party claiming to be aggrieved by a sale in chancery, which had been confirmed in the usual course of practice, will not be relieved, on the ground of the irregularity of the sale, in a case where he unreasonably delays to apply to the Court for relief, and it not clearly appearing to the satisfaction of the Court, that he has a substantial and meritorious ground of complaint.

A sale was made January 28th and confirmed April 13th. Another sale, upon another mortgage of the same property, was made January 21st, and confirmed February 1st; all in the same year. The party complaining knew of the sales at or about the time they took place, and he had knowledge of all the facts on which his claim for relief was based, in June. In October he files his petition to set the sales aside.—*Held*, too late.

*Heard July 6. Decided July 12.*

Appeal in Chancery from Bay Circuit.

This was a petition filed in the Circuit Court for the county of Bay in Chancery, in each of the above entitled cases, by Daniel Burns, to set aside the sales of the premises described in the mortgages, which the bills were filed in the Court below to foreclose. The Circuit Judge denied the prayer of the petition; from which decision Burns appeals to this Court.

*Green & Scofield,* for appellant.

*Grier & McDonell,* for appellee.

CAMPBELL, CH. J.

Daniel Burns, the mortgagor of certain premises sold under decrees in these cases, applied to the Circuit Court of Bay County to have the sales set aside. The main grounds relied on were that the sales were had contrary to an agreement or understanding that they should not be made during his absence from home; that the price was

inadequate, and that it was represented to others, who were to inform him, that the sale should not prevent his obtaining the land back at any time within a year, whereby he was induced to abstain from complaining of irregularities in the sales, and of their inadequacy, at an earlier day. The Goodwin suit was to foreclose a first mortgage, on which about $800 was due, and $300 and interest to become due thereafter; the Scheurmann suit was upon a third mortgage for $1,139.13, and there was an intermediate mortgage belonging to Kaiser & Widman for upwards of $500. All of these securities were in the custody of Grier & McDonell, solicitors for the complainants.

The land was advertised for sale under Scheurmann's decree for January 14, 1868, and under the Goodwin decree for January 18, 1868. The Scheurmann sale was adjourned one week, until January 21. The Goodwin sale, which had not been sufficiently noticed, was, nevertheless, made for $800 to O. H. P. Goodwin, the husband of Mrs. Goodwin, on the day appointed; but the solicitors of Mrs. Goodwin insisted the sale was contrary to their client's interests, and not authorized by them, and required and induced the commissioner to withhold the deed and publish an adjournment of the sale until January 25, when it was again adjourned on verbal notice until the 28th. On the 21st, the Scheurmann sale took place, and Scheurmann bid off the property for $200. He then purchased the Goodwin decree and the Kaiser mortgage, and bid off the land at the adjourned Goodwin sale for $100. In June, 1868, Burns applied to get back the property, but his right was denied. In October, 1868, he presented his petition, which is now before us on appeal, the Court below having denied his application.

Before considering the disputed facts, it will be necessary to understand what is before us on the application. There

is no doubt at all that the Goodwin sale was irregular, but as Burns was informed of both the sales, very soon, if not at once, and took no steps to object to them on that ground, he cannot now complain, except on some equity which would justify the delay. And these defects can only be used now, to fill out some case resting on substantial grounds.

The claim that the sales were made contrary to agreement cannot, for the same reasons, prevail as an original ground for relief, because an application should have been made at once to rescind the sales to make such a ground tenable.

But these grounds are now asserted in connection with the claim that Burns was induced, by representations which he relied on, to rest upon the belief that he could have a year to redeem the land.

The testimony is directly conflicting upon most of the material points. And we shall not attempt to discuss the details, but shall confine ourselves to giving our conclusions upon the important questions of fact.

We think it quite clear from the circumstances, that Scheurmann proceeded in good faith. The sale for $200 on one decree, and for $100 on the other, leaving a personal liability against Burns for about $2,500, would appear fraudulent by itself, and the fraud would not be covered up or cured by any release attempted for the first time after Burns had begun to clamor for his rights. But upon a review of the whole facts, we are satisfied that the purchase was made at these nominal rates with the understanding that the debts were to be canceled. There is evidence that some such cancellation was attempted. We do not know from the proofs whether it was formally complete, but if it was, as we conceive it to have been, an honest attempt, it would negative any fraud, and the subsequent

releases would stand clear of any appearance of subterfuge. And if there was no actual fraud, the equities must be very strong indeed, to justify us in divesting Scheurmann's title.

Whether Burns was misled or not, into believing the right to redeem was to continue, there is no doubt in our minds that neither Scheurmann nor his counsel authorized any such statement. If made to Burns as coming from them, it was by a misapprehension. He ascertained that it was denied, as early as June, 1868, and he should have acted more promptly than he did in seeking redress on any such ground. A delay of more than three months was unreasonable.

We think the evidence fails also as to inadequacy of price. The property was obtained by Scheurmann at an outlay of about $3,000, or nearly that sum. The preponderance of the evidence would indicate that at that time the land was worth not more than from $3,500 to $4,000 at the outside. His payments were equivalent to cash, and a margin of 25 or 30 per cent. upon a forced sale is not so unreasonable or uncommon as to make the' sale unfair. Very few persons would lend money on mortgage without a larger margin. There is no attempt to show that any one would have bid beyond what Scheurmann paid, or that Burns, by any reasonable delay, would have been able to clear off the mortgages at that time. Had the agreement not to sell in his absence been clearly proved, and had it been as clearly shown that he was absent until the latter part of February, 1868, there is nothing tending to show that the property could have been disposed of to any better advantage.

We are satisfied, therefore, that he has not been defrauded or even damnified in any way which would entitle him to complain, and that nothing but a later rise in the value of

the property gives color to his complaints. We think no misconduct is fairly chargeable to any of the parties or agents of whom he complains. We shall not attempt to sift the evidence which is claimed to reflect upon him and his pretensions, because there is no occasion to go beyond the proofs which fail to make out his case for relief. We think the action of the Circuit Court was entirely correct in refusing to open the sales. The orders must be affirmed with costs. The cases being substantially but one, there should be but a single counsel fee taxed in this Court.

The other Justices concurred.