## McBride v. Gwynn et al.

*(District Court, D. Colorado.  November 23, 1887.)*

1 JUDICIAL SALES—OBJECTIONS TO MASTER'S SALE—LAPSE OF TIME.

Objections that a master's sale was not published the length of time required by law by but one day, and that, through his incompetency, part of the property was sold for less than it could have been sold for, made two years after the sale, cannot be sustained, as they should have been made promptly.

2. SAME—DEED—EXECUTION BY MASTER—AFTER FILING REPORT.

A master's deed, for property sold by him after he filed his report, is void.

Motion to Set Aside Master's Sale and Deed.

Duncan McBride filed a bill in chancery, October 24, 1884, against George R. Gwynn, James Moynahan, and the Great West Mining Company, to foreclose a trust deed securing the payment of $3,000, loaned by McBride to the company.   The trustee named in the deed was D. C. Crawford, who refused to make sale; hence this application to the court. Gwynn and Moynahan claimed to own the premises on which the trust deed was given, and were brought in as defendants.   Leave was granted plaintiff April 6, 1885, to file an amended bill, making James M. Strickler, trustee of the company, and Alfred H. Wilson and Randall W. Wilson, grantees and assignees of Gwynn and Moynahan, defendants; and on the same day the two Wilsons and Strickler filed their answers admitting that the trust deed from the company to McBride was a prior lien, and consented to a decree for complainant.   On the second day, (rule-day,) the default of all defendants was entered by the clerk; and a decree for complainant was entered June 8, 1885, finding the company indebted to McBride, $1,916, the payment of which was secured by the trust deed; and W. M. Burns was appointed special master to make a sale of the property under the deed of trust.   Complainant filed a petition, September 7, 1885, asking that the master issue a new certificate of sale to him, which was denied on the same day, and the master was ordered to readvertise and resell.   The master filed his report January 14, 1886, and the company filed exceptions to the report of sale October 14, 1887. The company filed a motion October 28, 1887, to set aside the master's deed, for the following reasons:  (1) The report was not confirmed; (2) the master had no authority to execute the deed until the sale was confirmed; and (3) the report of sale was pending on exceptions to its confirmation.

*H. B. Johnson*, for the motion.

*Hugh Butler*, opposing.

HALLETT, J.   The circumstances of this case are somewhat extraordinary.   The sale was made something over two years ago; and the property, which was regarded by the parties as of the most value at the time of the sale, and perhaps ever since that time, was redeemed from the sale, so that at present there is no question affecting the defendants' title to

that property arising under this sale. The Adrian lode, which was undoubtedly regarded as the most valuable of all the property involved in the suit, and which property was regarded as the only property of any value, was afterwards redeemed from the sale made under this foreclosure proceeding by the Wilsons; and whatever the effect of that redemption may be, it is clear that no one, the Wilsons or anybody else, are claiming title to that lode by this sale. The only property affected by the sale are the adjoining claims, which at that time were sold to, or were bid off by, the Wilsons, for very small sums of money. The irregularities of the sale were such as would undoubtedly have been accepted as sufficient to cause the sale to be set aside, and a new one ordered, upon a motion made immediately after the sale, but that was not done, and no objection to the sale appears to have been brought forward until two years after it was made. Under such circumstances, unless the matters complained of are such as make the sale void, or of such extraordinary character as to show that it was entirely unfair and unreasonable, they ought not to be allowed or entertained.

As to the objection that the notice was not sufficient, it is somewhat doubtful whether that objection is well taken, although it seemed to be conceded by counsel for respondents in the argument. But excluding the day on which the notice was given, the twelfth of September, and including the day of the sale, the tenth of October, there were 28 days embraced in the time for which the notice was published. If, however, we say that was not sufficient, the time was very little short of it; it was only one day short; and upon that question the rule is, I think, that an irregularity of that kind, unless it be promptly taken advantage of, will not be sufficient cause to set aside the sale. In this respect the proceedings upon a sale of this kind are analogous to sales under execution at law. In the case of *Henderson* v. *Herrod*, 23 Miss. 434, the court says:

"Sales by a commissioner under decree of the chancery court should be regulated very much by the same rules which apply to execution sales at law by a sheriff. The objection in each instance is the same, namely, the execution of the judgment or decree of the court; and the interests of suitors, as well as public policy, demand that the sales should be in each instance alike certain and obligatory, and that the title which a purchaser obtains in either mode should possess a similar degree of validity and force."

I think that is a correct proposition; and as to the defects in the notice of sale under executions at law, it is stated in this work, (Freem. Ex'ns, § 286:)

"But a very decided preponderance of the authorities maintains this proposition: that the statutes requiring notice of the sale to be given are directory merely; and that the failure to give such notice cannot avoid the sale against any purchaser not himself in fault."

That proposition, I think, is established by the authorities cited; and, if it be conceded that the notice here was lacking in the requisite time required by the order and decree in one day, I think that the defendant, after so long a time has elapsed, is not at liberty to avail itself of it. The same observations are applicable to the price for which the property

sold,—that is to say, those claims other than the Adrian, that sold for very small sums of money. It is very evident, from what took place in this case, as well as what we have learned of this property in other cases, that these claims were mere adjuncts and appurtenances to the principal claim, which was the Adrian lode. It is said that the Adrian lode sold for $2,300 and for $2,500, and perhaps for some other sums near those sums, at a prior sale and at this sale; and that it is sufficient to show that this was the valuable property involved in the suit; and that the other claims lying adjacent were not, at that time, regarded as of any value at all, except in connection with the principal claim. Now, that insufficiency of price must be promptly objected to, and that application for a resale of the property must be promptly made, is a proposition affirmed by these cases: *Bullard* v. *Green*, 10 Mich. 268; *Leonard* v. *Taylor*, 12 Mich. 398; *Goodwin* v. *Burns*, 21 Mich. 211. I think there are other cases to the same effect; and that it is a proposition which is well established that upon a sale of this kind parties objecting to the sale upon the ground of inadequacy, or upon the ground of such irregularities as are alleged to have taken place upon this sale, must make their objections within a short time after the sale has been had, so that if a resale of the premises is to be ordered that it shall be done before any change of position has occurred on the part of any parties to the controversy, and before rights have been acquired in the property which may be prejudiced by any such order.

It is certainly true that Burns was a very incompetent and inefficient sort of man for this business. How he could conceive it to be his duty to accept so many bids from the Wilsons, and to return to them money after he had once received it, is beyond comprehension; and then to strike off the property in the way he did for a less sum than had been offered for it before,—all these things were very irregular, but they were items of which the principal defendant, the Great West Mining Company, and all other parties to this controversy, were bound to take notice within some reasonable time after the sale took place. That is enough as to these exceptions. I think the defendant is not at liberty to allege them at this time, but as to the deed which was made by Burns, as it is said, some time within six months, that is as utterly void as anything that can be spoken of. It has no more force and validity than if it had been made by somebody passing on the street, who was never heard of in the case. Burns had no authority to make it under any order that had ever been made in the case, and none arose by implication of law; and, from his conduct in the case, I should say he is a very improper person to have any such authority, if it could reside anywhere. I do not recognize him as having any authority whatever at any time since he filed his report in the case; certainly he never would have any unless it were conferred upon him by some new order of the court. That deed must be set aside, and the report must stand subject to any other order that may be made in the case. That is, I think, all that is necessary to say upon the subject at this time.

I regard this report as standing in the same situation as it was when first filed. I do not forget that in another suit in which the right of the

plaintiff to pursue the remedy which he sought in this case was very seriously questioned, it was ascertained that his conduct had been very extraordinary: but that is not a matter of which notice can be taken in this proceeding, and upon such exceptions and motions as are pending here in reference to this report.