NEVADA NICKEL SYNDICATE, Limited, v. NATIONAL NICKEL CO. et al.

(Circuit Court, D. Nevada. July 23, 1900.)

No. 641.

1. JUDICIAL SALE—INSUFFICIENT NOTICE—WAIVER.

The provision of Act March 3, 1893, § 3 (27 Stat. 751), that "no sale of real estate under any order, judgment or decree of any United States court shall be had without previous publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale," is intended for the benefit and protection of the judgment defendant, and creates a privilege or right which he may insist upon or waive. A failure to observe such requirement does not render a sale void, but only voidable, and the defect is cured by confirmation after due notice to the defendant, and without objection from him.

2. SAME—GROUNDS FOR SETTING ASIDE AFTER CONFIRMATION.

The fact that all the property of a defendant corporation, both personal and real, is sold under a decree in one parcel, as a whole, affords no ground for setting aside such sale on motion of the defendant, where the decree and order of sale expressly directed the sale to be made in that manner, and, although regularly served with copies thereof, the defendant made no objection on that ground, and especially where it is not shown that the price realized was inadequate, or that the defendant suffered any injury from the manner of sale.

3. SAME—IRREGULARITIES CURED BY CONFIRMATION.

Mere errors in a decree, in directing the manner of sale of property thereunder, or irregularities in such sale, afford no ground for setting aside such sale after confirmation had upon due notice to the defendant, and without objection.

4. SAME.

The fact that a decree provided that a sale of property made thereunder should be reported for confirmation after the expiration of the six months allowed for redemption does not render invalid a confirmation entered before that time, after due notice to the defendant of the application therefor, and without objection on its part.

5. SAME—NOTICE OF APPLICATION FOR CONFIRMATION.

Where the law makes no provision for the service of notice on the defendant of an application for confirmation of a sale, a notice served upon the defendant's attorney of record constitutes due notice to the defendant.

6. JUDGMENTS—COLLATERAL IMPEACHMENT.

The validity of a judgment rendered by a justice of the peace against a corporation defendant cannot be collaterally attacked by a stranger to such judgment on the grounds that such defendant is not correctly named in the title of the cause, or that the person on whom service was made was not an agent of such defendant on whom service could legally be made, where the correct name of the defendant is given in the body of the judgment, which also contains a finding that the person served was the duly-authorized agent of such defendant, and where the defendant itself makes no objection to the judgment.

Motions on behalf of defendant the National Nickel Company and one Sylvester F. Field, who claims to be a judgment creditor of defendant, having the right of redemption, to vacate a sale made by the special master, and to set aside the order of the court confirming the sale.

The motions made herein are based upon affidavits, upon the decree of the court, order of sale, return of the special master, the certificate of sale, order confirming the sale, and other documents pertinent to the motions. Counter affidavits were presented, and other documents submitted, in opposition to the motions. From the record, as presented upon these motions, the following facts appear: On the 12th day of August, 1899, a decree was entered in

this cause, due notice of which was given to the defendant's attorney, and copy served upon D. J. Noyes, the general managing agent of defendant on the 15th day of August, 1899. The decree, among other things, provides: "It is further ordered, adjudged, and decreed that said lands, premises, and property hereinafter described, or so much thereof as may be necessary, be sold by J. F. Emmitt, * * * who is hereby appointed a special master in this suit for the purpose of making said sale and executing the certificates, bills of ,sale, and deeds hereinafter provided for, and that said sale be made at public auction, and that all said lands, premises, and property be sold in one parcel, as a whole; that at such sale plaintiff * * * may bid and become purchaser, and that upon making such sales the said master shall give to the purchaser a bill of sale and immediate delivery of all personal property sold by him under this decree, delivering said personal property, and that said master give to the purchaser of any real property a certificate of sale, containing a particular description of the land and property, the price bid for the same, the price paid, and a statement that the land and realty sold is subject to redemption; that said master shall file a * * * certificate with the clerk of this court; that such lands and real property so sold may be redeemed from such sale by persons or corporations authorized by the statutes of the state of Nevada at the time and in the manner as provided by said statutes; that, if no redemption is made within six months after such sale, the said master shall report such sales to this court, and, upon the confirmation of such sale by the court, that said master shall execute and deliver to the purchaser a deed of the property bought by him, and, upon the production of such deed or conveyance by the purchaser. that he be let into possession of the land, premises, and property bought by him." After giving a description of the real estate and personal property, the decree further provides: "It is further ordered, adjudged, and decreed that said master, before making said sale of said lands, premises, and property. shall post notice of the time, the place of said sale, particularly describing said lands, premises, and property, for twenty days, successively, in three public places in each township where said property, or any part thereof, is situated, and also in the township or city where said property is to be sold; and, there being no newspaper printed or published in said Churchill county, it is further ordered, adjudged, and decreed that said master publish a copy of said notice in the Silver State, a newspaper printed and published at the town of Winnemucca, in the county of Humboldt, state of Nevada, for the same period of twenty days. It is further ordered, adjudged, and decreed that said sale be made at public auction, for cash, to the highest bidder, between the hours of nine in the morning and five in the afternoon, at the door of the county court house of said Churchill county, at the town of Stillwater." On November 3, 1899, an order of sale was issued and placed in the hands of the master for execution, and on the 13th day of January, 1900, the special master made return, among other things, as follows: "That under and by virtue and in pursuance of the annexed decree and order of sale, by me received on the 3d day of November, A. D. 1899, I did on the 13th day of November, A. D. 1899, levy upon the lands, mining claims, lodes, veins, and the premises and the improvements thereon, and personal property, as described in the said annexed decree and order of sale, * * * and I advertised the property [describing the same] * * * to be sold by me in front of the court-house door in the town of Stillwater, county of Churchill, state of Nevada, on the 9th day of December, A. D. 1899, at the hour of one o'clock p. m.; that previous to said sale I posted notices particularly describing the property, for a period of twenty days, in three public places of the township where the property is situate, and also in the township where the property was to be sold, and also caused due and legal written notice thereof to be published for a period of twenty successive days preceding said sale in the Silver State, a newspaper printed and published in the town of Winnemucca, Humboldt county, state of Nevada, * * * and that on the 9th day of December, 1899, the day on which said premises were so advertised to be sold as aforesaid, I attended at the time and place fixed for said sale, and exposed the said premises for sale in one parcel, pursuant to the said decree and order of sale, and at the request of the judgment debtor, at public auction, according to law, to the highest bidder, for cash, when the

Nevada Nickel Syndicate, Limited, being the highest bidder therefor, the said premises were struck off by me to the said Nevada Nickel Syndicate for the sum of $38,071.01, * * * which was the whole price bid, and which I acknowledge to have received; and that I delivered to said purchaser a certificate of said sale. * * * And I herewith return said judgment and decree fully satisfied." The certificate of sale which the special master was required by the decree to file with the clerk of this court was filed December 18, 1899, and the special master therein certifies "that the said property was sold in one lot or parcel, as directed by said decree and order of sale." It further appears that on the 4th day of December, 1899, five days prior to the sale, John Leighton, president of the defendant company, served notice upon the special master not to sell certain personal property which he had levied on for sale, claiming the same to belong to him; that a similar notice was served upon the special master by S. F. Field, who was the assistant secretary of the defendant corporation, one of its directors, and the alleged judgment creditor of the defendant corporation, claiming certain personal property described in the notice, to belong to him; that on the 22d day of January, 1900, the plaintiff gave notice that it would apply to this court to confirm the sale on January 27, 1900; that a copy of this notice was served upon, and service thereof acknowledged by, the attorney for the defendant the National Nickel Company, and that at said time a copy of the master's return was also served upon said counsel; that on the 27th day of January, 1900, no exception to said master's report having been filed, and it appearing that sufficient notice of the hearing of said application had been given to the defendant, an order was made confirming the sale as made by the special master; that on the 7th day of February, 1900, the defendant filed its assignment of errors, and an appeal was allowed to the circuit court of appeals; that this appeal was afterwards dismissed by the circuit court of appeals for the Ninth circuit, under rule 16 of that court (32 C. C. A. clix., 90 Fed. clix.). National Nickel Co. v. Nevada Nickel Syndicate (C. C. A.) 101 Fed. 1006.

The statute of the United States entitled "An act to regulate the manner in which property shall be sold under orders and decrees of any United States courts," approved March 3, 1893, provides as follows:

"Section 1. That all real estate or any interest in land sold under any order or decree of any United States court shall be sold at public sale at the court-house of the county, parish or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct.

"Sec. 2. That all personal property sold under any order or decree of any court of the United States shall be sold as provided in the first section of this act, unless in the opinion of the court rendering such order or decree, it would be best to sell it in some other manner.

"Sec. 3. That hereafter no sale of real estate under any order, judgment or decree of any United States court shall be had without previous publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale in at least one newspaper printed, regularly issued and having a general circulation in the county and state where the real estate proposed to be sold is situated, if such there be. If said property shall be situated in more than one county or state, such notice shall be published in such of the counties where said property is situated, as the court may direct. Said notice shall, among other things, describe the real estate to be sold. The court may, in its discretion, direct the publication of the notice of sale herein provided for to be made in such other papers as may seem proper." 27 Stat. 751.

George W. Baker, for the motions.
W. E. F. Deal, opposed.

HAWLEY, District Judge (after stating the facts.) The foregoing facts bring forcibly to the mind the absolute necessity upon the part of counsel, of the courts, and of their officers to use extra care and caution in the performance of their respective duties, and to see

that proper steps are taken, in strict accordance with the requirements of the law, in all judicial proceedings, so that the same will stand the test of the closest scrutiny, and be invulnerable to any after objections to their legality in form or substance. It is almost impossible for this court, with the volume of business before it, to searchingly examine in minute detail every pleading, order, decree, or other process which may be presented for approval. It is very often compelled, in the very nature of its business, to rely to a great extent upon its officers, and upon the attorneys regularly employed in a given case, to see that all the details are correctly set forth in conformity with law. There is but one perfectly safe road to travel in order to avoid difficulty. The path marked out by the law should be strictly followed. When it is departed from there is always more or less danger. It is true that there are many mere irregularities, and some departures from the statutes, often made, that are not of sufficient degree to vitiate the proceedings; but if they exist they furnish a foundation for future litigation and expense, which might readily, by ordinary care, have been guarded against, to say nothing of the extra trouble to the courts, for they are "born unto trouble as the sparks fly upward." The national courts, for self-protection, have almost universally, in the matter of important orders and decrees, required that they should first be submitted to opposing counsel, and not signed until the objections, if any, are passed upon and settled by the courts. Such has been the practice of this court, but for divers reasons was departed from in the present case, on account of the delay that would otherwise have occurred in the absence of defendants' counsel. Hence arises the present controversy. At the outset it must be understood that, in the discussion of questions involved herein, no objections tending to impeach the validity of the decree or regularity of the proceedings prior to the order of sale can be heard or considered on these motions. A decree which the court had jurisdiction to render, not appealed from, is final and binding, in so far as it affects the parties thereto, whether erroneous or not. Whenever a sale of property is decreed by a court of equity as the result of a litigation in a suit of which the court had jurisdiction, it is the policy of the law that it shall not be set aside for trifling causes, or for any matters which the complaining party might have attended to and had corrected; and whenever such a sale is attacked by a party to the suit the court will closely scrutinize all previous actions of the parties during the litigation which may throw light upon or tend to explain their actions or conduct with reference to the sale. The law does not tolerate that a party who might have taken an objection to the time, terms, and manner of the sale, as provided for in the decree, should designedly wait until the property has been sold to the other party, and then attempt to set aside the sale on any of such grounds. Mining Co. v. Mason, 145 U. S. 349, 356, 363, 12 Sup. Ct. 887, 36 L. Ed. 732.

The motion on behalf of the National Nickel Company will be first considered. It reads as follows:

"You will please take notice that the defendant * * * will move the said court * * * to set aside and annul the order heretofore made by said

court upon the 27th day of January, 1900, confirming the report of sale made by J. F. Emmitt, special master, under the decree and order of sale issued in said cause, upon the judgment and decree made therein, and entered as of August 7, 1899, and for an order vacating and setting aside said sale, upon the ground and for the reason that said confirmation by said court was improvidently made without notice to the said defendant National Nickel Company, and for the further reason that the notice and copy of the return of sale served upon the attorney for the defendant for the confirmation of said sale, dated the 22d day of January, 1900, misled and deceived the attorney for the defendant the National Nickel Company, in this: that it alleged and stated that the sale made by special master of the property of the defendant National Nickel Company, mentioned and described in said order of sale, was made by the master, in the manner therein stated, at the request of the said judgment debtor, National Nickel Company, and for the further reason that said confirmation was made contrary to the decree and order of sale issued herein, which provided that said confirmation should be had after the time for redemption of the real estate under said sale had expired, in case no redemption was had, and for the additional reason that said sale so made was improperly and insufficiently advertised, and deprived this defendant, the National Nickel Company, of a substantial right to have the proceeds of the personal property sold under said decree and order of sale applied pro tanto in satisfaction of the judgment rendered in said action, and thereby reduce the amount necessary to be paid by this defendant, the National Nickel Company, to redeem its mines, mining claims, and real property from the sale so made, —and for such other and further relief as may be just."

The most important question involved upon this motion is whether the sale of the property, it not having been made in accordance with the provisions of the statute (27 Stat. 751), is void, or only voidable. If absolutely void, as contended for by defendant, that would dispose of the motion, without reference to the other objections urged on behalf of the moving parties. If only voidable, then questions will arise whether the defendant can, under the facts as presented, maintain its motion. In Wilson v. Insurance Co., 12 C. C. A. 505, 65 Fed. 38, where, as here, the publication was not made "for at least four weeks," the court said:

"As the act of congress positively prohibits such a sale unless 'at least four weeks' publication has been made and is complete before the sale, this sale cannot be sustained."

This is claimed to be directly in point, and conclusive as to the actual invalidity of the sale; but that case is distinguished from this, in that there the objections were urged against the confirmation of the sale by the court, and that here no such objection was urged until after the confirmation of the sale, although due and timely notice was given to the defendant of the time of confirmation. It is admitted that, if the defendant had appeared and protested against the confirmation of the sale upon the ground that the notice of sale had not been given as required by the statute, the court would have refused to make the decree confirming the sale, but the plaintiff claims that, the defendant having failed to make its objections at the proper time, it is bound by the decree of confirmation; that the sale is res judicata, and cannot now be inquired into; that the error complained of is a mere irregularity, which has been cured by the consent and acquiescence of the defendant; and that the motion comes too late. Which of these contentions is correct? A judicial sale is one made as a result of judicial proceedings by a person legally appointed by the court for that purpose. It is a sale made pendente lite. The court is the vendor,

and the person appointed to make the sale is the mere agent of the court. The sale is not absolute until confirmed. The order of confirmation gives the judicial sanction of the court, and when made it relates back to the time of sale, and cures all defects and irregularities, except those founded in want of jurisdiction or in fraud. The court has power to confirm the sale, although the terms of the decree may not have been strictly followed. The matter of confirmation rests peculiarly upon the sound discretion of the court, to be judicially exercised in view of all the surrounding facts and circumstances, and in the interest of fairness, justice, and the legal rights of the respective parties. 12 Enc. Pl. & Prac. 6, 80, and authorities there cited; Ror. Jud. Sales, §§ 1–32, 106, et seq., and authorities there cited; 2 Freem. Ex'ns, § 286, and authorities there cited. The authorities bearing upon the question of judicial sales, the defects and irregularities so often occurring therein, and of the effect of the order of confirmation are not entirely harmonious. "It is sometimes said that a sale made under a decree must pursue the directions therein contained; that a departure from these directions renders the sale void. But to invoke this rule the departure must be of a very material character, and must, we think, be a departure which has not been approved by a decree of confirmation entered in the court which ordered and had supervision of the sale." Freem. Jud. Sales, § 21. It was expressly held by the supreme court in Deputron v. Young, 134 U. S. 242, 259, 10 Sup. Ct. 539, 33 L. Ed. 923, in reviewing the decisions of the supreme court of Nebraska upon this subject, that the purchaser "is concluded by the result of the proceedings to confirm or annul the same." In 2 Freem. Ex'ns, § 340, the author says:

"There are many irregularities of sufficient gravity to warrant the vacating of a writ on prompt application, but which the defendant will not be able to successfully assert after he has been guilty of tacitly ratifying the irregularity by his unwarrantable delay. * * * Wherever the irregularity is such that the defendant can be deemed to have waived it by his laches in not sooner complaining, or where it is of such a character that it can be cured by amending the writ, we think it cannot render the sale void, although the plaintiff may have purchased."

In McBride v. Gwynn (D. C.) 33 Fed. 402, the court held that lapse of time prevented the moving party from setting aside a sale where the notice of sale was not given for the full period of time required by the decree. If the sale was void for that reason, no lapse of time could make it valid. A void act has no legal existence. The case, therefore, is an authority on the point that a sale thus made is not absolutely void. In that case the grounds of the motion to vacate the sale were: (1) The report was not confirmed; (2) the master had no authority to execute the deed until the sale was confirmed; and (3) the report of the sale was pending on exceptions to its confirmation. The court, among other things, said:

"The irregularities of the sale were such as would undoubtedly have been accepted as sufficient to cause the sale to be set aside, and a new one ordered, upon a motion made immediately after the sale; but that was not done, and no objection to the sale appears to have been brought forward until two years after it was made. Under such circumstances, unless the matters complained of are such as make the sale void, or of such extraordinary character as to show that it was entirely unfair and unreasonable, they ought not to be allowed or entertained."

After discussing the question as to whether the notice of sale had been given for a sufficient period of time, and declaring that a decided preponderance of the authorities maintain the proposition that the statutes requiring notice of sale to be given for a specific time are directory merely, the court further said:

"If it be conceded that the notice here was lacking in the requisite time required by the order and decree in one day, I think that the defendant, after so long a time has elapsed, is not at liberty to avail itself of it."

See, also, Freem. Jud. Sales, § 28; Goodwin v. Burns, 21 Mich. 211, 214; Lyon v. Brunson, 48 Mich. 194, 12 N. W. 32.

In Rounsaville v. Hazen, 33 Kan. 71, 76, 5 Pac. 422, it was contended on appeal that the lower court erred in holding that the notice of sale therein given was valid. It appeared from the evidence that this notice was published in a weekly newspaper on March 30th, April 20th, and April 27th of the year 1882, for the sale which was to take place and did take place on April 29th of that year, and that the notice was not published in such newspaper on April 6th or April 13th, but for some unexplained reason was omitted from the issues of the paper on those days and of those dates. The court said:

"Does this omission render the notice void? We think it renders the notice voidable, and for that reason the sale might have been vacated or set aside upon proper motion before its confirmation. McCurdy v. Baker, 11 Kan. 111; Whitaker v. Beach, 12 Kan. 492. But we do not think that the omission renders the sale void, or that it may be treated as void in any collateral proceeding or upon any collateral attack."

In Conley v. Redwine (Ga.) 35 S. E. 92, the sale was not properly advertised, for the reason that there were not four insertions in four consecutive weeks in the newspaper in which the notice of sale was published, as required by statute; and the question which the court considered was whether or not this defect was such as to render the sale void, or whether it was simply an irregularity. The court, after citing numerous authorities, held that it was not void, and that the statute requiring specific notice of a sale was merely directory. In Doe v. Jackson, 51 Ala. 514, 517, the validity of a sale made by a guardian of an infant was attacked upon the ground that only 3 weeks' notice of the sale was given, instead of 40 days, required by statute. The court held that "the notice given of the sale was a mere irregularity." In Griffith v. Harvester Co., 92 Iowa, 634, 641, 643, 61 N. W. 243, the question was presented whether a judgment which was obtained against a party by a defective service of notice for a period shorter than the statute required was not void. The court said:

"The right of the harvester company to serve the notice to Griffith by publication, or personally outside of the state, is not in dispute; and the case is governed by the rules which determine the sufficiency of a service of notice, and the consequence of defective service. It is well settled in this state that where there has been a service of a required notice, and the proper court has determined that the service was sufficient, the subsequent proceedings based on such service are not void, but, at most, only voidable on proper application. * * * Our opinion is that the failure to serve the notice upon Griffith twenty clear days before the first day of the term at which judgment was rendered did not make the judgment rendered void, and that as he failed to take advantage of the defect in the manner provided by statute, and has not shown any reasonable excuse for his failure to do so, nor any defense to the

action, the judgment will not be set aside now because of the defective service. * * * The plaintiff has no just grounds for complaint. The original notice which was served upon him notified him of the commencement of the action, and also that a writ of attachment had issued against his property. It is shown that he did not know of the sale, but it is not shown that he did not know that judgment had been rendered for the sale of the land. No diligence whatever on his part to appear in the case, to ascertain what had been done, or to make redemption from the sale, is shown. So far as we are advised, he did nothing whatever after the notice was served on him, until after the time for redemption had expired and the sheriff's deed had been executed. As he failed to take advantage of his statutory right to object to the judgment, and has shown no excuse whatever for his failure, and has made no attempt to redeem from the sale, there is no ground upon which a court of equity can grant him relief."

In Berlin v. Melhorn, 75 Va. 639, 641, the court, in discussing these questions, said:

"We think it may be safely laid down, as a general rule deducible from the authorities, that, after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside, except for fraud, mistake, surprise, or other cause for which equity would give like relief if the sale had been made by the parties in interest, instead of by the court."

Fidelity Ins. & Safe-Deposit Co. v. Roanoke St. Ry. Co. (C. C.) 98 Fed. 475, 476, and authorities there cited; 2 Beach, Mod. Eq. Prac. §§ 821, 822; Jeter v. Hewitt, 22 How. 352, 362, 16 L. Ed. 345; Montgomery v. Samory, 99 U. S. 482, 489, 25 L. Ed. 375; Langyher v. Patterson, 77 Va. 470, 473; Harman v. Copenhaver, 89 Va. 836, 841, 17 S. E. 482; Robertson v. Smith, 94 Va. 250, 253, 26 S. E. 579; Frink v. Roe, 70 Cal. 297, 302, 11 Pac. 820; Leinenweber v. Brown, 24 Or. 548, 34 Pac. 475, 38 Pac. 4; Parker v. Dacres, 1 Wash. St. 190, 193, 24 Pac. 192; Gardner v. Railroad Co.; 102 Ala. 635, 643, 15 South. 271; Best v. Zutavern (Neb.) 74 N. W. 81; Ror. Jud. Sales, § 100.

In Schroeder v. Young, 161 U. S. 334, 342, 345, 16 Sup. Ct. 512, 40 L. Ed. 721, there is a clear exposition of the circumstances under which a court would be required to set aside a sale, even after the time of redemption had expired,—as, for instance, where undue advantage had been taken to the prejudice of the owner, or where the owner had been lulled into a false security, or the sale of the property was collusively made for the benefit of the purchaser, etc. The court, among other things, said that:

"In this class of cases, where fraudulent conduct is imputed to the parties conducting the sale, there is a concurrent jurisdiction of a court of equity, founded upon its general right to relieve from the consequences of fraud, accident, or mistake, which may be exercised, notwithstanding the statutory period for redemption has expired."

No such facts appear in the present case.

In Nebraska there is a statute which provides for the more "equitable appraisement of real property under judicial sales." Laws 1875, p. 60. It requires in all cases that the officer making the sale "shall call an inquest of two disinterested freeholders * * * and administer to them an oath impartially to appraise the interest" of the defendant in the property "at its real value in money, and such appraisement shall be signed by such officer and said freeholder respectively." Id. § 1. That statute is as imperative in its terms as is the statute under consideration in this case. In Neligh v. Keene, 16

Neb. 407, 20 N. W. 277, where it was admitted that there was no appraisement, and that the notice of sale was published in a newspaper in Omaha, and that there was no notice published in the county where the property was situated, the contention was that, in the light of these palpable errors and departures from the statutes of that state, the sale was absolutely void, and that the purchaser acquired no title thereby. The court, in discussing these questions, among other things said:

"A sale without an appraisement is not void. At most, it is erroneous. The court acquired jurisdiction by the service of process, and this jurisdiction continued until the sale was made and confirmed, and the deed executed. Errors may have been committed, but it was the duty of the party complaining of the same to endeavor to correct them in some of the modes provided by law. If he has failed to do so, he cannot treat the judgment as void. * * * Where the court has jurisdiction the confirmation of the sale cures all defects and irregularities in the proceedings, and such order cannot be attacked collaterally. [Citing cases.] This being the law, all the irregularities complained of, including the publication of the notice of sale, were cured by the confirmation, and the purchaser under the decree obtained all the plaintiff's title by the master's deed."

See, also, Wilcox v. Raben, 24 Neb. 368, 38 N. W. 844; Watson v. Tromble, 33 Neb. 450, 453, 50 N. W. 331; Bell v. Green, 38 Ark. 78, 80.

The provision of the statute of the United States requiring that in all cases four weeks' notice should be given of the time of sale was intended for the benefit and protection of the judgment debtor, and created a privilege and right which the judgment debtor in any case may insist upon or waive. In the present case the right so given was waived by the failure of defendant to make any objection upon that ground prior to the confirmation of the sale.

Having arrived at the conclusion that the sale was not void, it becomes necessary to consider whether the errors in the decree and mistake in the master's return are of such a nature as to require this court to set aside the sale. The defendant claims that by the peculiar provisions of the decree it was led to believe that the confirmation would not be made until the period for redemption had expired; but the affidavits show that defendant had due notice of the time set for the confirmation, and, if it desired to avail itself of this irregularity (if it were irregular), it ought then to have appeared and objected to the confirmation on the ground that by the terms of the decree the time for confirmation had not yet arrived. The reasons given by defendant for not appearing to contest the confirmation of the sale are not sufficient to warrant this court in making an order setting aside the confirmation. D. J. Noyes, the managing agent of the defendant, in his affidavit says: That in making the order of confirmation the defendant—

"Was given no reasonable notice or opportunity to appear and resist the same. * * * That upon the report of said sale to this court by said master it is positively averred under oath that the said sale was made by him, in the manner therein stated and particularly mentioned and set forth, in one parcel, both real and personal property, at the request of the judgment debtor, which affiant states is without foundation in point of fact, and that this statement in the master's report, as affiant is now advised, was made by inadvertence and is erroneous, and that said statement prevented this affiant,

as the agent of the defendant National Nickel Company, from appearing in said court in opposition to the confirmation of the sale upon the 27th day of January, 1900. Affiant further states that he was not present when the sale was made, and was not advised as to what action was taken by the National Nickel Company or its officers respecting the same, and believed when the said master reported said sale under oath, and that the same was sold in the manner therein described at the request of the judgment debtor, that the same was true, and was advised by the attorney for the defendant National Nickel Company that, if such sales were made at the request of the judgment debtor in the manner therein set forth, that a confirmation of the sale could not be successfully resisted, and that it would be useless to appear and oppose the same, and for that reason, and none other, no opposition was made to such confirmation. * * * Affiant further states that the confirmation of said sale inflicts the grossest injustice upon the defendant National Nickel Company. * * * Affiant further states that no notice of said confirmation was ever served upon any agent or officer of the defendant, * * * except the notice * * * which was served upon G. W. Baker, Esq., attorney for the defendant, a few days prior to the time set for confirmation."

The affidavit of defendant's attorney states that he relied upon the statement made by the special master, under oath, that the sale was made, as set forth in his return—

"At the request of the judgment debtor, and therefore took no steps to resist said confirmation, believing that the said sale was made in conformity with the request and demand of the said defendant company. Affiant further states that he consulted with D. J. Noyes, one of the agents of the defendant, in San Francisco, regarding the confirmation of said sale, and advised the said D. J. Noyes that, under the return of said master that the sale was made in the manner therein stated at the request of the defendant company, that this fact precluded any resistance to the confirmation thereof. Affiant further states that he has since been informed, within a few days past, by the attorney for the plaintiff, that there was no such request made by the defendant or any of its agents to said special master. Affiant further states that, as an attorney for the defendant National Nickel Company, he would have appeared in said court at the date set for the confirmation of said sale, and resisted the same, were it not for the fact that he believed. from the return of the special master, that the same was made in the manner stated in said return at the request of the judgment debtor, the National Nickel Company."

There are some portions of the affidavit of the managing agent that demand more than a passing notice. The entire affidavit was evidently carefully drawn. The omission to state certain material facts is one of its prominent features. It points out all the defects and irregularities, but is entirely silent as to the acquiescence of the defendant in relation thereto. It is bold in its statement that the "grossest injustice" has been done to the defendant, but fails to state in what respect any injustice has been done, or in what manner the defendant has been injured. It conspicuously points out with great clearness the alleged errors of the court and the inadvertence and mistake of the special master, but is entirely silent as to the negligence of the defendant and its failure to have such errors and mistakes corrected. It makes no allusion to the certificate of sale filed December 18, 1899, which was sufficient to give constructive notice to the defendant that the sale was actually made as required by the decree of this court. For ought that appears in the affidavit, the managing agent may have had personal knowledge of the fact stated in the certificate of sale, which, if true, would of itself be at least sufficient to put him on inquiry as to the truth of the matter. This, taken in con-

nection with the fact that the decree expressly declares that the property be sold in one parcel, is enough to question the good faith of the defendant in making this motion. But, independent of this fact, it is absolutely clear that the defendant was not misled by the mistake made by the special master in his return of the sale. The law does not require the plaintiff to serve any notice of the confirmation upon any officer or agent of the corporation. The service, if any was required, was sufficient upon the attorney. There is no statement that the attorney failed to notify the "managing agent" of the time set for confirmation. The law presumes he did his duty. Notice to him was, in the eye of the law, due notice to the defendant. In the absence of any fraud or excusable delay, the knowledge of the defendant's managing agent must be considered as its knowledge, and his negligence must be treated as the negligence of the defendant. It was his duty to keep himself advised of all that was done by the special master, and especially as to the mode of sale, in order to protect the interest of his principal. He certainly could not purposely remain away and plead ignorance in this regard in order to prolong the right of defendant to vacate the sale. He had no right to close his eyes when common prudence and ordinary attention demanded they should be kept open. The defendant's attorney and its managing agent had due and timely notice of the decree, the time of sale, and of the confirmation, and, as was said in Vigoureux v. Murphy, 54 Cal. 346, 352, "a knowledge of these facts was in legal effect equivalent to a knowledge of the sale." The defendant is a foreign corporation, and is not shown to have had any other officer or agent within this state. From the way the defendant has managed its business, it is apparent that its managing agent must have known that it could not have had any other officer or agent at the sale. Hence the statement that he "was not advised as to what action was taken by the National Nickel Company or its officers" at the time of sale falls far short of sustaining the proposition that he was or could have been misled by the statement in the special master's return that the sale was made as a whole "at the request of the judgment debtor." Throughout the entire litigation Mr. Noyes has represented the defendant. He was its mentor, its guide, its witness, its moving spirit, director, and trusted friend. His conduct and acts have been such as to convince the court that no important move has been made by defendant in the protection of its rights without his counsel and advice, and the court is unwilling to believe that he could have been misled or deceived in the manner stated. It would be a reflection upon his character, his intelligence, his shrewdness, and ability, to impute to him any want of knowledge as to what the defendant was doing or intended to do with reference to the property and premises in question. It is true that the statement made in the master's return, drawn by plaintiff's counsel, to the effect that the property, real and personal, was exposed for sale in one parcel "at the request of the judgment debtor," is not correct. It was inadvertently made, and permission has been given the officer to amend his return in this respect so as to conform to the truth. Did this erroneous statement mislead the defendant to its injury? It relates only to the sale of the property in one parcel. It has no relation

to the other objections urged to the confirmation of the sale. The defendant did not appear to oppose the confirmation, because its agent and its attorney thought that, if it requested the property to be sold in one parcel, it was useless to object; that is, object on that ground. If it had other objections to make, no reason whatever is given why it failed to appear and oppose the confirmation on the other grounds now urged. The excuse offered for nonattendance is based on that one ground: "And for that reason, and none other, no opposition was made to such confirmation." What would have been the result if the defendant had appeared and urged that ground alone against the confirmation? It must be remembered that the decree and order of sale, a copy of which was regularly served upon the defendant's managing agent and attorney long prior to the day of sale, expressly provided "that all said lands, premises, and property be sold in one parcel, as a whole." The defendant and its managing agent were bound to know and did know that it would be so sold unless objections were promptly made to this provision of the decree. If the defendant had so desired, it could have objected to this part of the decree, and asked for and secured a modification thereof, requiring the personal property to be sold separately prior to the sale of real estate. No such application was made. Moreover, neither the defendant nor any of its agents nor its attorney appeared on the day of sale, or ever made any demand upon the court or the special master to have said property, or any part thereof, sold in separate parcels. Under these circumstances, it is evident that the sale would not have been set aside on the ground that the property was sold in one parcel, even if defendant's counsel had been present and urged that ground at the time of the confirmation. The authorities upon this subject are to the effect that a sale of property as a whole, instead of in parcels, ought always to be confirmed, where, as here, no objection was made to the decree directing that it be sold as a whole. Especially is this true where there is no proof tending to show that the personal property, or any part of the property, real or personal, would have sold for a sum sufficient to satisfy the judgment and costs. White v. Crow, 110 U. S. 183, 189, 4 Sup. Ct. 71, 28 L. Ed. 113; Central Trust Co. v. Sheffield & Birmingham Coal, Iron & Ry. Co. (C. C.) 60 Fed. 9, 17; Swenson v. Halberg, 1 McCrary, 96, 1 Fed. 444; Marston v. White, 91 Cal. 37, 40, 27 Pac. 588; Hudepohl v. Mining Co., 94 Cal. 588, 591, 29 Pac. 1025; Bressler v. Martin, 42 Ill. App. 356, 362; Insurance Co. v. Brown, 81 Iowa, 42, 46 N. W. 749; Bank v. Quick, 71 Mich. 534, 537, 39 N. W. 752. There is no claim that the price bid for the property as a whole was inadequate. The property sold for its full value. The plaintiff became the purchaser, and bid the amount of its judgment, including costs. There is no showing made on the part of the defendant that it has in any way been injured. Its right of redemption has not been impaired. In fact, it has been enlarged, because under the decree it is given the right to redeem the personal property as well as the real estate. The general principle is well settled that mere informalities or irregularities in a judicial sale do not constitute sufficient ground to set it aside unless the moving party can show that he has suffered injury thereby. Stockmeyer v. Tobin, 139 U. S. 176, 196, 11 Sup. Ct.

504, 35 L. Ed. 123, and authorities there cited.  But, in any event, it seems clear to my mind that the defendant, by reason of its failure to make objections to the decree, or at the time of the sale to make a request that it be sold separately, is now deprived of the right to have the sale set aside, and a new order of sale made, requiring the personal property to be sold separately, in order that it may be given the privilege of redeeming the real estate.  As was said in Smith v. Randall, 6 Cal. 47, 52, "to set aside the sale on this ground, under the circumstances, would be to allow a party to take advantage of his own deceit or negligence."  The defendant, by its failure to object to the clause in the decree "that all said lands, premises, and property be sold in one parcel, as a whole," must be held to have consented and acquiesced in this mode of sale, and is now as much estopped from urging this objection as it would be if it had appeared at the day of sale and requested that the property should be sold in a lump.

With reference to the motion made by the judgment creditor "for an order of said court directing the special master appointed by the said court to sell the property of the National Nickel Company, to make and file a certificate of sale of the real property of the defendant National Nickel Company, which is subject to redemption, and the amount for which such redemption may be had," but little need be said.  Prior to the argument of this motion the plaintiff filed the following offer:

"And now comes the plaintiff in the above-entitled action, and offers to pay to Sylvester F. Field, the sum of $299.74 damages and $110.15 costs of suit in cash, and any and all other sums to said Sylvester F. Field that this court may find due upon any judgment against defendant National Nickel Company, mentioned in the petition of said Sylvester F. Field, filed in the above-entitled cause, praying that the sale made by the special master, J. F. Emmitt, under the decree entered in said cause be set aside; and, in case said offer is not accepted, said plaintiff will abide by and obey any order said court may make upon deciding the motions pending to set aside said sale, as to the payment of any amount found by the court to be due upon said judgment."

Under this offer the only question is whether the judgment obtained in the justice's court against the defendant is valid.  It is claimed that the judgment is not a judgment against the defendant National Nickel Company, and that it is invalid because it is not shown that summons was served upon any authorized agent of the defendant.  In the certified copy of the judgment rendered in the justice's court of Humboldt county, and filed in Nye county, the title is:

"A. Feliz, Plaintiff, v. A. E. Lasher and The Nevada National Nickel Mining Company, Defendants."

In the entry of the judgment the following recitals appear:

"A. E. Lasher appears for himself, and for himself only, and not as agent of the defendant the National Nickel Company.  A. E. Lasher making no denial either for himself or the defendant of the amount claimed by the plaintiff in the original complaint, and each of said defendants having been regularly served with process, Mr. A. E. Lasher, being duly sworn, states on oath that he is in the employ of the defendant company as their agent, and that he attended to their business in the absence of his principal or its officers, Mr. D. J. Noyes and Mr. John Leighton.  He further testified and admitted under oath that he had been duly served with process for himself and as such agent.  Such being the proofs submitted upon the part of the plaintiff, and the defendants not submitting any proof to the contrary, and the

court having jurisdiction over the cause and the parties, it is therefore ordered: (1) That the defendants are jointly and severally indebted to said plaintiff in the sum of $299.74, as set forth in the complaint on file herein. Defendant A. E. Lasher appeared, admitting the account. Said defendant National Nickel Company, although duly served with process by service upon A. E. Lasher, its duly-qualified agent and representative, failed to make any appearance whatever. Wherefore, no answer being filed by said defendants, and no counterclaim being submitted to the court for consideration herein, judgment is hereby entered against said defendants in favor of the plaintiff for the sum of $299.74, mentioned in the complaint, and costs of suit, taxed at $110.15."

In the assignment of this judgment by A. Feliz to Sylvester F. Field appears the following:

"I have this day assigned, sold, transferred, and set over to Sylvester F. Field that judgment recovered by me against the National Nickel Company for $299.74 and costs of suit," etc.

And thereafter the judgment is referred to as having been entered and docketed as follows:

"A. Feliz, Plaintiff, v. A. E. Lasher and The Nevada National Nickel Mining Company."

I am of opinion that the irregularities relied upon by the plaintiff are not of such a character as to justify this court in holding that there was no valid judgment against the defendant. The recitals in the body of the judgment cure the clerical mistake made in the title of the cause. It may be that the defendant might have had the judgment set aside on both of the grounds relied upon by the plaintiff; but it does affirmatively appear that Lasher was an agent of the defendant, and, in the absence of any proof that he was not such an agent as to warrant a service of summons upon him to be binding, I do not think the plaintiff is in a position to raise that point. It is apparent upon the face of the petition of the judgment creditor that he and the defendant are not at war with each other on these points, but are a unit in their desire to take advantage of the mistakes made by the plaintiff. The affidavit to the petition of the judgment creditor is made by the managing agent of the defendant, who states therein "that he is the attorney in fact of Sylvester F. Field, and attending to his business as such in the states of California and Nevada; that the said Sylvester F. Field is a resident and citizen of the state of New York, and for that reason this verification is made by this affiant." Affiant further states that he is personally cognizant of all the facts, and that "the statements therein contained are true, of his own knowledge." The motion of the defendant is denied. The plaintiff having paid into court the amount due on the judgment, it is further ordered that the motion of the judgment creditor be, and the same is hereby, denied. The plaintiff is entitled to recover its costs incurred by reason of the respective motions.