CUMBERLAND LUMBER CO. v. TUNIS LUMBER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. June 12, 1909.)

No. 869.

COURTS (§ 355*) — MANNER OF SALE BY FEDERAL COURTS — CONSTRUCTION OF STATUTE.

Act March 3, 1893, c. 225, 27 Stat. 751 (U. S. Comp. St. 1901, p. 710), prescribing the manner in which "all real estate or any interest in land sold under any order or decree of any United States court, shall be sold," etc., is mandatory and devests such courts of the discretion which theretofore existed of making sales otherwise than by public auction as therein prescribed, and a sale otherwise made is illegal and void and does not bind the purchaser even after confirmation, who cannot be required to pay for and accept a title which might be subsequently impeached for palpable legal defect in the proceeding itself under which the sale was made.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 935; Dec. Dig. § 355.*]

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

At the time of the proceeding and sale involved in this appeal, a creditors' bill in the name of Wilson, administratrix, and Tunis, administratrix, against the Tunis Lumber Company was pending on the equity docket in the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk. The Tunis Lumber Company was a corporation organized under the laws of Virginia, with its principal place of business in Norfolk, and it was engaged in the lumber business, and was the owner of sawmills, docks, lumber yards, and other property located in the states of Maryland, North Carolina, and Virginia. The court had appointed Theophilus Tunis and Alvah H. Martin, receivers, who were conducting and operating the business of the Tunis Lumber Company, under orders and decrees of the court. On the 16th of March, 1908, certain unsecured creditors of the Tunis Lumber Company intervened in the pending cause by petition, and sought to have a sale of 3,200 acres of James river timber land, 2,700 acres of which was owned in fee by the Tunis Lumber Company with the right to the company to remove the timber from the remaining 500 acres within a specified time, upon the payment of $96 per year after January 1, 1909. Upon the filing of this petition a notice was is-

sued to the parties to the suit and the receivers to show cause why sale of this property should not be had. Thereupon, after a hearing, the court on the 14th of May, 1908, decreed a sale of the real property above described. The decree entered by the court directed the two receivers to advertise the property for sale in certain newspapers for 10 days, and to receive private sealed bids for the same, to be opened at a time to be designated in the advertisement, not less than 30 days from the beginning of the advertisement, and that no bids of less than $40,000 would be accepted. The terms of the sale provided in the decree were, one-fourth of the purchase price in cash, to be paid within 10 days after the sale, and the balance of the purchase money in two equal installments, payable in one and two years, with interest from date, to be secured by deed of trust on the property, with the option to the purchaser to pay the entire purchase price in cash, if desired. The receivers set about to effect a sale as thus provided. They made the advertisement required by the decree, stating therein that such bids might be submitted to the receivers, and that they would be opened at 12 o'clock m. on the 30th of June, 1908, at room 1215 Bank of Commerce building in the city of Norfolk, Va., and they also reserved the right to reject any and all bids. Four sealed bids were made to the receivers for the property, as follows: Wm. M. Tilley & Co., $44,005; Jos. T. Deal. $45,000; Howard T. Williams, $61,125; Cumberland Lumber Company, $63,300. All of these bids were filed by the receivers with a report which they made to the court.

On the 11th of July, 1908, the court, by a decree duly entered, accepted the bid of the Cumberland Lumber Company for the property at the price of $63,300, the same being the amount offered by the said company in their sealed bid, and the court further decreed that the said bidder comply with the terms of the sale, and that upon such compliance Theophilus Tunis and Alvah H. Martin, special commissioners, appointed for that purpose, were given authority and directed to convey to the purchaser the property sold. So far as the record shows, the one-fourth of the purchase money was not paid by the Cumberland Lumber Company to the receivers, nor were the terms of the sale complied with in any other respect. After the decree of the 11th of July, 1908, accepting the bid of the Cumberland Lumber Company, as above stated, no further proceedings were taken in the matter until the 15th of August, 1908, when the said company filed in the court a petition duly signed and verified, as follows:

"Your petitioner, the Cumberland Lumber Company, respectfully represents to the court: That it was a bidder for certain lands and timber ordered to be sold in the above-entitled cause by a decree entered on May 14, 1908, and that the said bid was accepted by this honorable court, and a decree was entered on the 11th day of July, 1908, confirming said sale to your petitioner; that since the confirmation of said sale your petitioner has discovered that said sale was not had in accordance with Act Cong. March 3, 1893, c. 225, 27 Stat. 751, which provides and directs how sales of real estate shall be had under orders and decrees of any United States court as will be seen by reference to the decrees entered and the advertisements, all on file as a part of the record in the above-entitled cause; and that no notice of these proceedings was given to the Tunis Lumber Company. Your petitioner was not aware of these facts at the time of the confirmation of said sale, and has not paid any part of the purchase price for said lands and timber because of these facts. Your petitioner therefore prays that the motion to confirm said sale shall be reheard, and that the said decree be annulled and set aside, and that your petitioner be released from said bid."

The receivers filed the following answer to this petition:

"These respondents, saving to themselves the benefit of all just exceptions, answer the said petition as follows: By way of preface, these respondents will state that the move to sell the James river timber did not originate with them, as the court is well aware. Certain general creditors had been urging, for some time, that they should be paid. On March 16, 1908, J. P. A. Mottu, Esq., and others, appeared by counsel and filed a petition urging that their debts be paid by selling this property. The receivers made a report thereon, the matter was discussed in open court by counsel of both sides, and on May 14, 1908, an order, prepared by counsel for said petitioners, was signed direct-

ing the calling for sealed bids, after certain advertisements, and the sale of the property pursuant thereto. These respondents at once proceeded to obey the directions of said order by advertising the property for sale in the manner required by said order. They took sealed bids, and the best of said bids was that of the Cumberland Lumber Company, offering $63,300. There was another bid very near the same amount, to wit, the bid of Howard T. Williams for $61,125. The court directed the acceptance of the bid of the Cumberland Lumber Company, and the decree confirming the same was prepared and submitted to their counsel before signature, and no point was raised, in any way, shape, or form, as to its legality. Thereupon the decree of confirmation was entered, on July 11, 1908, requiring the said Cumberland Lumber Company to carry out the terms of its bid.

"On the 6th day of August, 1908, the Cumberland Lumber Company filed its petition claiming that this sale is illegal. These respondents took the ground that the most that could be claimed was that the sale was irregular, that the defect was not at all a jurisdictional one, and that there was nobody who could legally question the form of the sale, even if the law mentioned applied to such sales. They offered, by their counsel, to consent to the resale under the statute, in order to save all possible question, provided the Cumberland Lumber Company was willing to stand by its bid, and to guarantee to bid at least that much on the second sale. They suggested a resale at the expense and risk of the Cumberland Lumber Company, and following out the terms of the statute, which would have placed that company in the position of getting the benefit of any surplus over its first bid, and they have offered everything in their power to perfect the title of the Cumberland Lumber Company, if it needs any further perfecting. The said company, however, would agree to nothing along this line, and now files its petition, nearly a month after the confirmation of the sale with their full knowledge, setting up not newly discovered matters of fact, but newly discovered matters of law. These respondents submit that it would not be equitable to allow a resale, under these circumstances, with no guaranty on the part of the Cumberland Lumber Company that they would insure the property's bringing as much as before, especially in view of the fact that there was another bid so near their bid, of which these respondents, by this proceeding, lose the entire benefit. These respondents make as exhibits herewith, and as parts hereof, the said original petition of the unsecured creditors filed March 16, 1908, the order entered thereon filed March 16, 1908, the decree directing the sale thereunder filed May 14, 1908, the report of the receivers as to the bids filed July 11, 1908, and the decree of confirmation of said sale filed July 11, 1908."

Thereupon the court on the 6th of October, 1908, entered the following decree:

"This cause came on this day to be heard upon the petition of the Cumberland Lumber Company to set aside the confirmation of the sale to it on the ground that the same was not conducted as provided by the act of March 3, 1893, relating to sales of land in federal courts, and upon the answer of the receivers thereto, and was argued by counsel. And it appearing to the court that the bid of the said Cumberland Lumber Company was duly reported to the court by the receivers as the highest and best bid, that before the confirmation thereof the said Cumberland Lumber Company was notified, and that the said confirmation was with its full knowledge, and that it raised no objection to the said confirmation on the ground set out in its petition; and it further appearing to the court that the Tunis Lumber Company has consented to the said sale, and that the special commissioners named by a decree heretofore entered in this cause have tendered and will deliver at any time to the said Cumberland Lumber Company a good and sufficient deed for the property in said proceedings mentioned, joined in, and executed by said Tunis Lumber Company; and the court without intending to express an opinion as to the true intent and meaning of the act of the 3d of March, 1893, being of the opinion that there is no equity in the contention of the petitioner, and that the confirmation of the sale is binding upon it and cannot be set aside under the circumstances: It is adjudged, ordered, and decreed that the prayer of the petitioner be, and the same is hereby, denied. And it further appearing to the court that the said petitioner has not complied with the terms of

the said sale as required by the order of confirmation and the practice in that behalf: It is ordered that the said petitioner do show cause in this court, at Norfolk, Va., on the 2d day of November, A. D. 1908, at 10 a. m., why the said property should not be resold at its risk and expense, and it be held liable for any deficiency in such resale, and that a copy of this decree be served on the said Cumberland Lumber Company, or Williams & Tunstall, its counsel, at least 10 days before said sale. And on motion of said Cumberland Lumber Company by counsel in open court (the receiver's counsel being present and waiving a citation), an appeal is hereby granted the said Cumberland Lumber Company from this decree and from the decree of July 11, 1908, confirming said sale, to the next term of the United States Circuit Court of Appeals for this circuit on its giving an appeal bond in the penalty of $5,000 to be approved by one of the judges of said court."

The appeal of the Cumberland Lumber Company was perfected as required by the order of the court.

W. L. Williams (Williams & Tunstall, on the brief), for appellant.
Robert M. Hughes and Edward R. Baird, Jr., for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge (after stating the facts as above). This case is before us to be considered upon the following assignments of error:

First. The court erred in entering the decree of July 11, 1908, confirming the sale of certain lands, because it appears upon the face of the proceedings that the act of Congress of March 3, 1893, regulating and governing the sales of lands under the decrees of the United States courts, had not been complied with, and because the said Tunis Lumber Company had had no notice of said confirmation.

Second. The court erred in entering the decree of October 6, 1908, refusing to set aside the said decree of July 11, 1908, motion to set aside having been made during the term at which the decree of July 11, 1908, had been entered, and for the reason that it appeared on the face of the proceedings that the sale of the said land had not been made in compliance with the said act of Congress, and that no notice of the confirmation had been given to the Tunis Lumber Company.

The act of Congress involved here is Act March 3, 1893, c. 225, 27 Stat. 751 (U. S. Comp. St. 1901, p. 710), approved March 3, 1893, entitled "An act to regulate the manner in which property shall be sold under orders and decrees of any United States courts." We give the act in full. It reads:

"First. That all real estate or any interests in land sold under any order or decree of any United States court shall be sold at public sale at the courthouse of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct.

"Second. That all personal property sold under any order or decree of any court of the United States shall be sold as provided in the first section of this act, unless in the opinion of the court rendering such order or decree, it would be best to sell it in some other manner.

"Third. That hereafter no sale of real estate under any order, judgment, or decree of any United States court shall be had without previous publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale in at least one newspaper printed, regularly issued and having a general circulation in the county and state where the real estate proposed to be sold is situated, if such there be. If said prop-

erty shall be situated in more than one county or state, such notice shall be published in such of the counties where said property is situated, as the court may direct. Said notice shall, among other things, describe the real estate to be sold. The court may, in its discretion, direct the publication of the notice of the sale herein provided for to be made in such papers as may seem proper."

The question presented to us in this case rests upon the construction to be given to the act of Congress above set out as to whether the provisions of the said act in regard to the sales of real property are mandatory or merely directory, with the further question, arising upon the proceedings had in the case, whether appellant, by its action in relation to the bidding, together with the decree of acceptance of the bid, and confirmation of the sale, can now be heard to complain of the alleged defect in the form of the sale as directed by the decree.

The act of Congress is explicit in its terms. It makes no exception, but provides one method, and only one, by which lands are to be sold under the orders and decrees of the courts of the United States. If, as contended, the act should be construed as merely directory, the inquiry arises, why the necessity of the legislation at all? The power already existed in the courts of equity to order or decree sales of realty by public auction, at such place and on such terms as said courts might direct, also the power to make sales by such other method as the courts in their judgment and discretion might adopt. In the face of these existing powers, and of the fact that the courts of equity had for time almost out of mind used and favored the practice of selling realty by the method of sealed bids, the Congress placed upon the statute books the act of 1893. It will be observed, also, that the title of the act states its purpose to be to regulate the manner in which property shall be sold under orders and decrees of the United States courts.

The intention of Congress to limit the powers of the courts of the United States in respect to the sales of realty is emphasized by the fact that in the second section of the act it is provided that personal property shall be sold as provided in the first section, unless, in the opinion of the court rendering the order or decree for sale, it would be best to sell it in some other manner. Thus it will be seen that it is still left by the plain terms of the act to the discretion of the court to sell personal property otherwise than at public sale; but there is no such provision in the first section, which directs the method by which real property shall be sold. The conclusion therefore seems to us to be irresistible that the intention of Congress was to confine sales of realty, when made by the orders or decrees of the federal courts, to one method, by public sale, as provided in the statute, and to divest the courts of the discretion which theretofore existed of making sales of such property otherwise. It is insisted, however that appellant became the bidder for the land in this case according to the plan of sale adopted by the court, that the bid was accepted and the sale confirmed by the decree of the court without objection, and thereby the bidder was concluded, or, at least, that the bid was made in full light of the proceeding, that it was accepted and confirmed by the court, in which the bidder acquiesced, and that the appellant cannot now take advan-

tage of the irregularity in the manner of the sale. If our construction of the statute is a true one, the decree for sale was not only irregular; but it was directly contrary to the plain mandate of the law, and the acceptance of the bid and the decree of confirmation did not establish a contractual relation between the court and the bidder, such as to bind the latter. In a judicial sale, the court, acting through its duly constituted agency, becomes a vendor, and whilst the court may not be considered a guarantor of title, yet in no case should the court selling real property permit the title of the purchaser to be beclouded by reason of irregularity, defect, or illegality, in the proceeding under which the sale is made. Undoubtedly, if a judicial sale of land is made under conditions which are in accord with legal requirements, and due proceeding, the doctrine "caveat emptor" applies, and the purchaser is concluded; but it would be inequitable to compel a bidder at a judicial sale to pay for and accept a title which might be subsequently impeached for palpable legal defect in the proceeding under which the sale was made. A bidder at a judicial sale has the right to assume that the court which directed the sale acted within its authority, and that the sale is being made under the conditions authorized by the law. Such bidder, who might otherwise purchase a good title, should not have the title jeopardized by reason of the act of the court itself.

The counsel for appellee cites, in support of the position that the decree of the Circuit Court should be affirmed, two cases from the Supreme Court of the United States. The first is Stockmeyer v. Tobin, 139 U. S. 176, 11 Sup. Ct. 504, 35 L. Ed. 123. We do not see any particular bearing that this case has upon the one under consideration, as the opinion is only to the effect that in Louisiana mere informalities in a judicial sale do not constitute sufficient ground for setting it aside. The other is the case of Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732. In that case, Mr. Justice Brewer, delivering the opinion of the court says:

"It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and conditions of such a sale, as well as to ordering and refusing a resale. The chancellor will always make such provision for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and, after a sale has once been made, he will certainly, before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted."

The court goes on further to say that the purpose of the law is that the sale shall be final, and that no sale should be set aside for trifling reasons on account of matters which ought to have been attended to by the complaining party prior thereto, etc. This was a case in which complainant was undertaking to defeat the confirmation of a sale where the property had been struck off to another, and the effort was being made to reopen the bidding. The court was of the opinion that the complainant had had ample opportunity, and that the sale should be confirmed. We do not see that there was any question of irregularity or defect in the manner of the sale in that case, and therefore we fail to perceive its application here. It will be observed also that

both of these cases were decided anterior to the act of March 3, 1893, and, of course, the construction of that act was not involved.

Another case cited by the appellee is that of Godchaux et al. v. Morris et al., 121 Fed. 482, 57 C. C. A. 434, decided by the Circuit Court of Appeals for the Fifth Circuit in February, 1903. The act of March 3, 1893, is discussed in that case, and it is held that the failure of the commissioner to offer separately a small parcel of the land of small value, as directed by the terms of the decree, was a mere irregularity which would not defeat the confirmation, unless loss or injury resulted, and it was further held that, where a federal court had jurisdiction to order a sale of real estate, the fact that its decree directed that the sale be made at a place other than the courthouse of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as required by the act of March 3, 1893, did not render the sale void, nor constitute ground for refusing confirmation, since the decree, although erroneous, is binding, unless reversed on appeal. We understand even in that case that, although the sale was public, the direction to sell otherwise than provided in the statute was error which would have been corrected on appeal; but we do not regard that case as decisive of the point we are considering, for, from our view, it is clear that the prime object Congress had in mind was to require real property sold under the orders and decrees of the United States courts to be disposed of at public sale.

As a general thing (though there are, of course, some exceptions), the decisions of the courts of this country, relative to judicial sales of land, have been in cases where a defeated competitive bidder has undertaken to assert some right, or where the defendant in the action in which the land was decreed to be sold undertook subsequently to establish ownership by reason of alleged irregularity or defect in the proceeding. And it is in these cases, more particularly in the latter class, that the courts of equity have held that the previous action of the party should have a material bearing upon the question of relief sought. If it appear that a bidder was present at the sale, was fully informed of the terms and conditions, as well as the character, quality, and quantity of the property offered, and he stood by and permitted another to become the purchaser, the courts of equity have not been inclined to favor opposition on his part to a confirmation of the sale, and if the land is decreed to be sold by a court of competent jurisdiction, and the owner of the land, who was a party to the suit, is fully informed as to the proceeding, and acquiesces therein, permits his land to be sold, the sale confirmed, title passed to the purchaser, he will not thereafter be heard to assert title to the land because of alleged defect or irregularity in the proceedings under which the sale was made. The latter proposition is founded on the principle of equitable estoppel. This principle is well discussed in the case of Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79, and the doctrine there declared is in entire harmony with the elementary treaties on the subject and with American decisions generally.

The discussion of this doctrine in connection with the case here may seem to be something of a digression, and we really think it is; but we

are led to it by reason of the fact that the appellee argues that the action of the appellant, under the circumstances, was such as to take away the right to complain; but we do not think that the appellant comes within the rule laid down in any of the cases referred to, nor have we been able to find any case which holds that a proposed purchaser is bound under conditions, such as existed in this case. The appellant was not a party to the suit. It had no interest in the suit, and, so far as appears, no knowledge of it, anterior to the time the receivers advertised the land for sale, and the appellant is not undertaking to prevent a confirmation of the sale to another, on account of some irregularity or defect in the proceeding; but the effort is to be relieved from a bid made at a judicial sale, because of the fact, as alleged, that, after the bid was made, it was discovered that the decree directed the sale to be made in a manner not authorized by law.

It is well settled, as a general principle, that a bidder at a judicial sale, whose bid is reported to the court and accepted and the sale confirmed, becomes a party to the suit in which the sale is decreed, to the extent that the court may compel compliance; but we do not think that this principle applies in this case.

According to our construction of the act of Congress, the decree for sale in this case was void. It conferred no authority upon the receivers to make the sale of the land in question. Their action therefore was a nullity and constituted no basis for enforceable obligation on the part of the bidder. Therefore, following the views we have expressed, we think that the decree for sale was unauthorized and void, and that the subsequent proceedings, both by the receivers, in attempting to make the sale, and the decree of the court confirming it, were of no legal force.

In the discussion so far, we have not referred to the third section of the act of March, 1893, prescribing the manner in which judicial sales of real property shall be advertised. That section provides expressly that no sale of real estate under any order, judgment, or decree of any United States court shall be had without the advertisement therein provided, which is the publication of notices of the proposed sale in a newspaper once a week for at least four weeks prior to the sale, etc. So taking the entire act together, beginning with the title, which sets out that the purpose of the act is to regulate the manner in which property shall be sold under the orders and decrees of the United States courts, then the first section, which declares specifically that all real estate or interests in land sold under orders or decrees of United States courts shall be sold at public sale, with the provision in the second section leaving it to the discretion of the court to sell personal property otherwise, followed as above stated by the provision for advertisement, it is clear to our minds that it was the intention of Congress to establish a single and uniform method of selling realty under the orders and decrees of the federal courts and to confine the courts to it.

The prayer of the appellant's petition should have been granted, and the decree of confirmation of the sale set aside.

The judgment of the Circuit Court is therefore reversed.

Reversed.