## In re BRITANNIA MINING CO.

### In re NICKEY.

#### (District Court, W. D. Wisconsin. July 17, 1912.)

1. MORTGAGES (§ 137\*)—FORECLOSURE—TITLE—TIME FOR REDEMPTION.

   Under the law of Montana, the legal title to mortgaged real property remains in the mortgagor after foreclosure during the statutory period of redemption.

   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 270–276; Dec. Dig. § 137.\*]

2. BANKRUPTCY (§ 293\*)—COURTS—JURISDICTION.

   The jurisdiction of the various courts of bankruptcy is limited to the boundaries of the district, a court in another district having no power to collect a debt or seize any property beyond those limits, though the title is in the trustee, and in order to obtain any custody thereof, if custody is refused, the trustee must invoke the ancillary action of a local court, federal or state, having within itself no power to execute the law outside its own district.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.\*

   Jurisdiction of federal courts in suits relating to bankruptcy. See note to Bailey v. Mosher, 11 C. C. A. 313.]

3. BANKRUPTCY (§ 262\*)—SALE OF ASSETS—EQUITY OF REDEMPTION—PLACE—STATUTES.

   Act March 3, 1893, c. 225, 27 Stat. 751 (U. S. Comp. St. 1901, p. 710), requiring judicial sales of land to be made on the property itself or at the courthouse in the county where it lies on not less than four weeks' notice, was applicable to sales in bankruptcy proceedings; and hence, where a bankrupt Wisconsin corporation owned an equity of redemption in a mine in Montana, a sale of such equity in Wisconsin without complying with such act was void.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 363–365; Dec. Dig. § 262.\*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Britannia Mining Company. The referee denied the petition of G. R. Nickey, a creditor, to set aside a sale of certain of the bankrupt's real estate in Montana subject to a mortgage, and he filed a petition for review. Reversed.

Bloodgood, Kemper & Bloodgood, of Milwaukee, Wis., for petitioner.

Nohl & Nohl, of Milwaukee, Wis., for trustee.

SANBORN, District Judge. The bankrupt is a Wisconsin corporation. All of its real estate consisted of a mine and equipment in Montana. The bankruptcy petition was filed February 24, 1912,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and adjudication followed promptly, based upon the admission of the bankrupt of its inability to pay its debts. At the time of the adjudication the mine had been sold on foreclosure sale in a suit begun in Montana, and the petitioner, G. R. Nickey, was the purchaser at the sale for $3,000. The right of redemption was inventoried by the bankrupt, and appraised at $1; all other property being appraised at $97.

It appears, further, that on March 8, 1912, the trustee petitioned for leave to sell all the assets, including the right of redemption from the foreclosure sale; an offer of $100 having been made. The ordinary notice by mail was given to creditors of a hearing on the petition to sell for March 22, 1912. On that day the matter was heard, and other bids made, and a sale of all the assets was made for $900 to Walter Buschmann. On April 5, 1912, G. R. Nickey petitioned the referee to set aside the sale, on the alleged ground that the right of redemption in the mining property was real estate situated in another state, and therefore the bankruptcy court had no jurisdiction to sell it, and that the right of redemption was worth more than the amount of the sale. No objection was made on the ground that Act Cong. 1893, c. 225, 27 Stat. 751 (3 Fed. Stat. Ann. 54, U. S. Comp. Stat. 1901, p. 710), requiring judicial sales of land to be made upon the property itself, or at the courthouse of the county where it lies, and upon not less than four weeks notice, was not complied with. Demurrers being filed to the petition, they were sustained by the referee. A petition for review of the order sustaining the demurrers was thereupon filed by Mr. Nickey, and in that petition the act of 1893 is for the first time expressly referred to.

[1] The law of Montana with respect to mortgages was adopted from California. Before adoption, the California law had been so construed by the Supreme Court of California as to make the interest of the mortgagor after sale on foreclosure, and up to the time of sheriff's deed, real property. In Simpson v. Castle, 52 Cal. 644, it was held that the mortgagor after foreclosure sale remains vested with the legal title during the period of statutory redemption. Under the familiar rule, this construction was adopted with the passage of the Montana statute, so that the law of the two states is now identical. The right of redemption being real property, the next question is whether the act of 1893, requiring sales under federal court orders to be made in a certain manner, applies to bankruptcy sales. General provisions are found in the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), relating to the sale of real estate. Section 70b reads:

"Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than with the approval of the court for less than seventy-five percentum of its appraised value.",

This has no relation to notice, or place of sale, nor is there any other clause in the act which in any way expressly regulates the practice to be followed on sales of real property. Whether the act of 1893 applies to bankrupt sales is left wholly to construction.

That such sales are made under the orders of the bankruptcy court,

and only by its authority, seems quite clear. The sale in question was so made. The act of 1893 therefore applies unless the general purpose and intent of the later act exclude it, bearing also in mind the reason for the adoption of the earlier one. Considering alone the language of the two statutes, little difficulty arises. The act of 1893 provides that "all sales of real estate or any interest in land sold under any order or decree of any United States Court" shall be made in a certain manner, and be in the county where the land is situated. This sale was made under such an order. The later statute governing bankruptcy makes no provision whatever on the subject. From the words alone, therefore, there is no difficulty in concluding that the earlier statute must apply. But, when the purpose of the bankrupt act is considered, a doubt arises. As said in Re Edes (D. C.) 135 Fed. 595, the evident intention of Congress in passing the bankrupt law was to provide ample and complete method of administering and disposing of the assets of bankrupts, and to place the details of the administration of the estate within the jurisdiction of the court. And it was held in that case that the court of bankruptcy, under the broad powers given by the bankrupt law, may order a private sale of either real or personal property situated in the district. It is no doubt true that the bankrupt law creates a complete and comprehensive system for the speedy collection and disposition of the estate.

[2] Nevertheless, the court is limited by the boundaries of the district. It has no power to collect a debt, or seize any property, beyond those limits, although the title vests at once in the trustee. In order to obtain any custody of such property (if custody is refused), it must call in the ancillary action of a local court, federal or state. It has no power whatever to itself execute the law when it acts beyond its own district. How is it, then, that a bankrupt court of one district may sell land in another? One answer to the question is that in so doing it acts only on the bankrupt's interest in the land, and makes the sale within the limits of its own district; and, were it not for the act of 1893, there could be no doubt of the power. Although it has always been the common practice in foreclosure cases for the court of primary jurisdiction to invoke the aid of other courts exercising ancillary jurisdiction in making sales of land beyond its own district, yet there is no doubt that courts of equity, acting in personam, and within their own territorial limits, may dispose of the interests of all persons before them in any land whatever, and wherever located. The English Court of Chancery sometimes foreclosed mortgages on property in the Colonies, disposing of the property interests of the parties as though the land were located in England. The question, therefore, is not one of power, but of statutory construction. While the District Court for Wisconsin could not make a sale of Montana land in Montana, it could but for the statute make sale of the bankrupt's interest by a sale made in Wisconsin.

[3] The intent of the act of 1893, as well as that of the bankrupt law, must also be considered. It was passed to prevent the sacrifice of the interest of debtors and subsequent creditors by sales made at a distance from the property sold often without any notice whatever

coming to any one in the neighborhood, or having either any knowledge of its value or interest to purchase. Many sales before 1893 were merely formal, without any real notice in fact, although generally made in the local district, but at a distance from the property. Congress was therefore importuned to apply a remedy. The sale in question here is a good example of what happened before the act of 1893. On short notice by mail, given to the creditors alone, a mine situated more than a thousand miles away is disposed of. No one having any interest to buy, or any knowledge of value, had any fair opportunity to learn anything about it, or any time to prepare for such a purchase. Such a sale would generally be nothing but a pure form, virtually a sacrifice of the property, whatever it may have been in this case. Against such a situation the act of 1893 was intended to provide. Several of the Circuit Courts have decided this statute to be merely directory, but the Circuit Court of Appeals of the Fourth Circuit, in Cumberland Lumber Co. v. Tunis Co., 171 Fed. 352, 96 C. C. A. 244, holds its provisions mandatory, and that the purchaser, even after confirmation, is not bound by a sale made in violation of the statute.

The District Court of Maine, in which the Edes Case was decided, had no such situation to deal with as that presented here. On the whole, I think the sale was invalid because the act of 1893 was not followed. Under that act the sale could only have been made in Montana by authority of the local United States Court, exercising ancillary power under the Bankruptcy Law, pursuant to the amendment of 1910 (Act June 25, 1910, c. 412, § 2, 36 Stat. 839 [Fed. Stat. Ann. 1912 Supp. 480, U. S. Comp. St. Supp. 1911, p. 1492]), and Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, decided before such amendment.

It is urged on behalf of the trustee and the purchaser that objection to the sale has been waived because petitioner objected only that the court was without jurisdiction, and did not raise the question of ancillary power nor the statute of 1893, until he filed the petition for review. The objection made, however, would be generally understood to mean that the sale was ineffectual because not made by the proper court, or in a proper manner. Thus construed, the question was sufficiently raised.

The order of sale is reversed, and an order should be entered setting aside the sale.