### REVERE COPPER & BRASS, Inc., v. ADRIANCE MACHINE WORKS, Inc., et al.

#### No. 124.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Shiland, Hedges & Pelham, of New York City (Arleigh Pelham and Arthur G. Donnelly, both of New York City, of counsel), for defendant and certain creditors, appellants.

Almet Reed Latson, of New York City, for receiver.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

A receiver was appointed for the Adriance Machine Works, Inc., March 29, 1932, on a creditors' bill for conservation of its property. After operating the business, with the assistance of the successful bidders, until November 4, 1932, the court ordered the liquidation of its assets. The receiver offered the entire property for sale. In the receiver's fourth report of November 7, 1932, he set forth offers of purchase received and the court entered an order directing that the offers be considered on November 14, in open court, on notice to the parties; that is, to the offerers and the creditors' committee.

On November 14, 1932, the receiver recommended rejection of a $30,000 offer for all of the assets and recommended the acceptance of a $15,000 offer for one unit of the property, made by an employee of the corporation and by the bookkeeper employed by the receiver in operating the business. There was full discussion, in open court, and an adjournment had until November 21, 1932, in order that additional bids might be sought and the bids be placed in final form for acceptance or rejection. This hearing may be regarded as merely passing upon the report of offers, made in private, for the court provided for a judicial sale on November 21. At the hearing on November 21, the court personally asked for the bids and higher bids. The receiver then called attention to an impending patent litigation of which he had knowledge on October 26, stating that the cost of the defense of that suit would be $7,500. He suggested a possibility of recovery against the receivership estate. It is conceded that he went over the whole matter with the successful bidders in arranging a plan for their offer, which was presented on November 21, as $30,250 plus the payment of receiver's expenses and giving a surety bond of $50,000, indemnifying the receiver against costs and recovery in the patent litigation. The court asked for further offers on that basis and the corporation's employee and the bookkeeper, Callahan and Rohde, raised their offer to $35,100. Attorneys representing creditors objected to the inclusion of the patent question in the bids.

The property of the corporation had been classified as: (1) Water meter unit; (2) can machinery unit; (3) voting machine unit; (4) surplus equipment. The court's efforts obtained a $8,850 bid for the water meter unit, $18,000 for the can unit, and $2,050 on the voting machine unit, an aggregate total of substantially less than $35,100 bid for all the property even allowing something for surplus equipment said to be worth not over $1,000. The receiver proposed that the water unit be sold separately and Rohde and Callahan pay $26,350 for the remainder. This was an addition of $100 bid for all the property. An offer was made to raise the bid $1,000 and give the indemnity bond, but when the condition of paying receiver's expenses was explained the bidder withdrew. The court asked if there were any other bids than $35,100 for all of the property on any basis and received no bids other than that of Rohde and Callahan who were declared the successful bidders.

On this application to set aside the sale, it is urged that when the $50,000 bond was offered, Callahan and Rohde never expected to give it because they expected to obtain a discontinuance of the patent suit. But full opportunity was given to bidders at the sale to bid on any basis, as the court said when this application to set aside the sale was heard. The sale was confirmed April 5, 1933.

By the Act of March 3, 1893, c. 225, 27 Stat. 751 (28 U. S. C. §§ 847, 848 [28 USCA §§ 847, 848]), the method of conducting a judicial sale rests in the discretion of the court. Usually an order authorizing some one to conduct the sale is made but the order of November 4, 1932, authorized the receiver to offer the property for sale and to submit any offers to the court, on such notice as he directed. This would seem to contemplate a private sale, but the hearing on November 21 was conducted as a public judicial sale by the court. Bethlehem Steel Co. v. International C. E. Corp. (C. C. A.) 66 F.(2d) 409. Notice was given to the parties interested. The terms and methods of a judicial sale are largely in the discretion of the district judge directing the sale. Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 S. Ct. 887, 36 L. Ed. 732; Luhrig Collieries Co. v. Interstate Coal & Dock Co., 287 F. 711 (C. C. A. 2); In re Haywood Wagon Co., 219 F. 655 (C. C. A. 2).

Appellate courts will examine charges

710

that the bidders were discouraged by incorrect announcement of liens against the property, and if justice requires the order of confirmation will be reversed. Brown v. Lane Cotton Mills Co., 28 F.(2d) 911 (C. C. A. 5); Hudson v. New York & Albany Transp. Co., 180 F. 973 (C. C. A. 2). It is true that here there was reference made to a patent litigation as affecting the worth of the assets. This may have been discouraging to bidders; it was vague and threatening and its effect could not be estimated by bidders. But if further information as to this patent litigation was deemed necessary, the court might have adjourned the hearing and permitted further inquiry upon request of any bidder interested. The bidders did not become inquisitive about it. The condition requiring the bidder to pay an unstated sum as the receiver's expenses might likewise have been discouraging to bidders. But no questions were asked as to the amount of these expenses and such information was procurable upon inquiry of the court or the receiver.

It was a judicial sale, and we think conducted with legal formality.

Order affirmed.