### READ v. ELLIOTT et al.

### KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.

#### No. 4266.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1938.

Huger Sinkler and S. Henry Edmunds, Jr., both of Charleston, S. C. (Nathans & Sinkler, of Charleston, S. C., on the brief), for appellant.

W. M. Shand, of Columbia, S. C. (Benet, Shand & McGowan and Christie Benet, all of Columbia, S. C., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The decree of the District Court, which is the subject of the appeal in this case, required the appellant, W. H. Read, to specifically comply with his agreement to purchase certain real estate situated in Charleston, South Carolina, from the appellees as receivers of the Peoples State Bank of South Carolina, whose property was being administered in federal equity by the District Court. The sole objection made by the purchaser to the carrying out of his agreement was put on the ground that his title to the property might be questioned because in making the judicial sale there had been no compliance with the applicable regulatory federal statutes codified in sections 847–849 of title 28 of the United States Code, 28 U.S.C.A. §§ 847–849. The particular point insisted on by the purchaser is that the conditions under which the sale was made constituted it a private as distinct from a public sale, and that it was invalid because made without prior notice to interested parties and without appraisal of the property, as required by the statute, in the case of private sales. On the other hand, the receivers contend that the sale was a public sale made in strict compliance with the statute. Which of these two contentions is correct is the question presented by this appeal.

The facts, which are not in controversy, may be briefly stated. After assuming equity jurisdiction over the property of the Peoples State Bank of South Carolina, and appointing receivers therefor, the District Court on January 28, 1933, authorized the receivers to sell any and all lands then owned or subsequently acquired by the receivers, appointed a special master to conduct the sales and directed that the properties should be sold at public auction, after published notice of the time, and at a place as required by the applicable statute. The order further authorized the receivers to bid on the several parcels when offered for sale, on behalf of the receivership; and "in case any of such parcels are bid in by the receivers for the account of the receivership, said special master is hereby authorized and empowered to re-advertise and re-sell said property in accordance with the terms and provisions of this order; and so on from time to time until a sale shall be made and consummated." Acting

under this order, several parcels of real estate, including the one here involved, were ·duly advertised for sale on June 1, 1936. There being no other bid for the property here involved, known as the Blake Street property, one G. H. Hill, an employee of the receivers, acting under their authority, bid $3,500 for the property for account of the receivers and the property was accordingly knocked down to him. The named purchase price represented Mr. Hill's estimate of the fair value of the property after inspection and examination before the sale. The sale so made, was not reported to the court for confirmation, and nothing further was done about the matter until on September 29, 1936, the appellant, W. H. Read, through a broker who was acting as agent for the receivers and expecting to be paid his commissions by them, submitted an offer to the receivers of $3,500 for the property, with a check for $105 being three per cent. payment on account as a binder. On October 1, 1936, this offer was accepted in writing by the receivers who therein advised that they "have today asked the court to confirm this sale." On October 9, 1936, the receivers in an ex parte petition reported to the court that they had sold the Blake Street property on June 1, 1936, to G. H. Hill, Agent, for $3,500 and that he had assigned his bid to W. H. Read and asked that the sale be confirmed; and by order dated October 10, 1936 the district court confirmed the sale of the property to W. H. Read and directed the receivers and the special master to convey the property to the purchaser.

Counsel employed by Read to examine the title advised the receivers on October 21, 1936, that they raised a question as to the validity of the title, but otherwise the purchaser was ready, willing and able to complete the transaction. Thereafter on December 4, 1936, a deed conveying the property to Read and a formal assignment by G. H. Hill, Agent, of his original bid for the property was tendered to Read, but refused on advice of counsel. In consequence thereof the receivers filed in the district court on December 23, 1936, their bill of complaint in equity against Read for the specific performance of his contract of purchase. At the trial of the case the defendant submitted the testimony of several experienced real estate title lawyers to the effect that in their opinion the title to the property would be defective on the ground that there had never been an effective public sale of the property because it had been bid for by Hill only as agent for the receivers and for their account, and without any personal or individual responsibility on his part; and that there was no compliance with the statutory provisions which would validate the sale as a private sale. But the District Judge adopted the view that there had been an effective public sale and that the title in the purchaser would be valid and unquestionable, and thereupon decreed specific performance against the purchaser.

Sections 847–849 of title 28 of the United States Code, 28 U.S.C.A. §§ 847–849, were originally enacted March 3, 1893, c. 225, 27 Stat. 751. Prior to that time the terms and conditions for the sale of real estate under orders or decrees of federal courts were determined by orders of court in the particular proceeding (Pewabic Mining Co. v. Mason, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732); but the statute effected an important change in this respect by prescribing rules of uniform application for·the sale of real estate. It was thereby provided that all real estate "shall be sold at public sale at the Court-house of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct"; and personal property should likewise be sold "unless in the opinion of the court * * * it would be best to sell it in some other manner." And it was further provided that "no sale of real estate * * * shall be had without previous publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale in at least one newspaper printed, regularly issued and having a general circulation in the county and State where the real estate proposed to be sold is situated, if such there be." As the result of experience it became recognized that the absolute requirement for a public sale under all conditions was a too rigid requirement, and Congress, by amendments of 1934 and 1935, 48 Stat. 1119, 49 Stat. 159, 49 Stat. 390, 28 U.S.C.A. §§ 847–849, authorized private sales of real estate but only on the conditions of (1) prior notice to and hearing of interested parties; (2) for a sum not less than two-thirds of the appraisal price fixed by three disinterested appraisers appointed

by the court; (3) after ten days newspaper notice of the terms of the sale and (4) that no sale be confirmed where a bona fide offer has been made "which offer shall guarantee at least a 10 per centum increase over the offered price specified in such private sale"; and the statute was expressly made inapplicable to sales in bankruptcy or by receivers or conservators of banks appointed by the Comptroller of the Currency.[1]

There has not been complete uniformity of view in federal judicial decisions as to the precise effect of a failure to strictly comply with the requirements of the statute in public sales of real estate. In some cases the provisions of the statute have been said to be mandatory, and in others only directory.[2] But that difference is not of controlling importance here where the question is not the effect of failure to strictly comply with the statute, but whether there was any compliance at all. If the sale in this case is to be regarded as a private sale, then clearly it should not have been confirmed because it is admitted by the receivers that there was no compliance, and indeed no attempt to comply, with the conditions of the statute required for a confirmation of a private sale. And conversely, it is conceded by the appellant that if the sale in this case can properly be regarded as having been made at a public sale, then the requirements of the statute have been fully met.

After consideration of the procedure in this case resulting in the judicial sale to the appellant, we are constrained to the conclusion that it must be treated as a private and not a public sale. It is true the property was duly offered at public sale, but there were no bids for it other than the one submitted by an agent for the receivers, who was regularly employed by them on a fixed annual salary, and in making the bid he professedly acted not for himself individually but solely in his representative capacity and on their express authority with the understanding that he was assuming no personal responsibility, and he would not have been able to individually comply with the terms of purchase. His bid must, therefore, be regarded as made solely for the account of the receivers. In substantial effect the property was really withdrawn from sale at the public offering. But even if the formalities observed could be treated as a sale to the receivership, the result would be the same, because the property so purchased would have had the status of property subsequently acquired by the receivers, as to which the original decree provided that a re-sale should be made after due advertisement.

If we look to the mere formalities of the sale to Read, it is clear from the record that they import a new and private sale rather than the consummation of a former public sale. Read's offer was not to take an assignment of Hill's outstanding and unconfirmed bid for the property, but was an offer made directly to the receivers to buy the property from them, and it was made through a real estate broker, Storen, acting for the receivers and looking to them for his commission for the particular transaction. It is true that Hill

---

[1] It had previously been decided by the Supreme Court that the statute did not apply to bankruptcy administration. Robertson v. Howard, 229 U.S. 254, 263, 33 S.Ct. 854, 57 L.Ed. 1174.

[2] The provisions of the statute were treated as mandatory in Cumberland Lumber Co. v. Tunis Lumber Co., 4 Cir., 171 F. 352; Wilson v. Northwestern Mut. Life Ins. Co., 8 Cir., 65 F. 38; Westmoreland Brick Co. v. U. S. Malleable Iron Co., 6 Cir., 16 F.2d 371; which cases dealt with the requirements of the statute as to published notice of the sale. Expressions to the same effect are to be found in Bovay v. Townsend, 8 Cir., 78 F.2d 343, 105 A.L.R. 359; MacKinnon v. American Agar Co., 9 Cir., 73 F.2d 835, and In re Britannia Mining Co., D.C.Wis., 197 F. 459 (although not dealing specifically with the notice provision of the statute). But in Nevada Nickel Syndicate v. Nat. Nickel Co., C.C.Nev., 103 F. 391; Godchaux v. Morris, 5 Cir., 121 F. 482, and Plimpton v. Mattakeunk Cabin Colony, Inc., D.C.Conn., 9 F.Supp. 288, real estate sales were confirmed despite failure to strictly comply with the provisions of the statute as to time or place of sale, with expressions to the effect that the provisions of the statute were directory only. In Revere Copper & Brass, Inc., v. Adriance Mach. Works, 2 Cir., 68 F. 2d 708, and Bethlehem Steel Co. v. International C. E. Corporation, 2 Cir., 66 F.2d 409, the sales were confirmed where the requirements of the statute as to public sales had not been followed but in the former case the property sold was apparently personal property only, and in the latter case it does not clearly appear from the opinion whether the property was real or personal or both.

formally assigned his bid to Read, and the receivers' ex parte petition for confirmation reported the sale as an assigned bid from Hill, Agent, to Read; but it is equally clear that Read understood he was making his purchase directly from the receivers through a broker to be paid by them; and evidently the receivers did not regard Hill's bid at the public sale as having accomplished a real sale of the property because they made no effort to have it confirmed until they secured the offer from Read four months later.

However, we base our view not on the formal procedure, but on the substance of the transaction. If the agent for the receivers had not made the bid at the public offering of the property, it would not have been even arguable that the later sale to Read was a public sale; and in the circumstances, Hill's bid as agent, there being no outside bid, was really nothing more than an announcement by the receivers of what they considered a fair price for the property. In effect, the property, although offered at public sale, was not then sold but really withdrawn from sale; and four months thereafter sold to Read at the price bid by Hill at the public sale. To treat what was really a new and private sale made four months after the public auction as a public sale by reason of the formality of the assignment of Hill's bid would, in our opinion, create a precedent which might promote evasions of the statute and in some cases entail results which the statute was enacted to avoid. The result of the procedure in this case was a private sale of property at a price really fixed by the receivers as an upset price without prior authority of the court, and without the advantage of competitive bids which is the main object of a public sale after due notice.

The absence of outside bids for the property at the public offering might very well have been treated by the court as reasonable grounds for confirming Read's offer in this case at private sale after compliance with the conditions of the statute applicable thereto; and indeed the purchaser suggested that that course be followed; but the district judge, after careful consideration, took the view that it was unnecessary as in his opinion the sale had been duly made at public auction. In this view we are unable to concur. It is true that it does not affirmatively appear in this case that the sale price was inadequate or that it was otherwise disadvantageous to the receivership; and it is also true that it is the purchaser only who is here complaining, and he is not dissatisfied with his purchase but is anxious only that he receive a clearly marketable title. But it must also be noted that the confirmation of the sale was ex parte only without notice to others in interest, who might have objected. The principle involved is, however, of more far reaching importance than the consequences in the particular case. This was impliedly recognized by the district judge in his order that the costs of the case should be imposed on the receivership and not on the losing purchaser, and also that the latter should be indemnified against personal expense in the controversy by the allowance to him of a reasonable counsel fee. It further appears from the record that the procedure adopted for the particular sale was a general one applied in the sales of numerous other parcels of property in this receivership, the purpose being to avoid, for the intended benefit of the receivership estate, the expenses consequent upon re-advertisement and re-sale at public auction of parcels of property not sold to outsiders at the first public offering. While we are reluctant to disturb a general plan conceived to be in the interest of this particular receivership, we are constrained to hold that it was not consistent with the requirements of the statute.

It has been urged upon us that this holding will throw a cloud upon the title to other parcels of real estate where the sales have been fully consummated by the same procedure without appeal and where the time for appeal has expired. But this apprehension is not well founded, because such consummated transactions will not be subject to collateral attack. Where a court has general jurisdiction of the subject matter, it is well settled that irregularities of procedure are cured by final judgment after time for appeal therefrom has expired. This rule was expressly applied by the Supreme Court in the case of Robertson v. Howard, 229 U.S. 245, 264, 33 S. Ct. 854, 57 L.Ed. 1174, where a sale of real estate by a trustee in bankruptcy was held good as against collateral attack despite irregularities in the sale resulting from an alleged lack of appraisal and error in the description of the property contained in the published notice of sale. Earlier cases to the same effect are Thompson v. Tolmie,

2 Pet. 157, 7 L.Ed. 381, and Hall v. Law, 102 U.S. 461, 464, 26 L.Ed. 217. In some cases arising under the statute here involved it has been said that irregularities in the sale rendered it "void" while in other cases the expression used has been "voidable" only.[3] But the principle that seems to be fairly deducible from the cases, when read in connection with the precise legal situation presented to the court, is that while mere irregularities in the sale may constitute good ground for refusing to confirm the sale when the objection is originally and directly made in the particular proceeding, or at least on timely appeal in the case, by an interested party who is not precluded from effectively making the objection on the grounds of waiver or estoppel, nevertheless a final judgment or decree without appeal, even though erroneous, may not be collaterally attacked in a different and subsequent proceeding, as for instance by an ejectment suit. Cumberland Lumber Co. v. Tunis Lumber Co., 4 Cir., 171 F. 352; Lansburgh v. McCormick, 4 Cir., 224 F. 874; Godchaux v. Morris, 5 Cir., 121 F. 482; National Nickel Co. v. Nevada Nickel Syndicate, 9 Cir., 112 F. 44; Westmoreland Brick Co. v. U. S. Malleable Iron Co., 6 Cir., 16 F.2d 371, 372; Plimpton v. Mattakeunk Cabin Colony, Inc., D.C., 9 F.Supp. 288, 306; Robertson v. Howard, 229 U.S. 254, 33 S.Ct. 854, 57 L.Ed. 1174; Chandler v. Peketz, 297 U.S. 609, 56 S.Ct. 602, 80 L.Ed. 881; May v. Board of Com'rs, C.C., 30 F. 250, 255; 1 A.L.R. 1431, 1433, 1446.

It may be said for the receivers that the appellant has sustained no prejudice by the confirmation of the sale to him, because it could not hereafter be successfully collaterally attacked; but it cannot be denied that he was a party in interest entitled to make the objection that the title was not marketable, and over his objection it should not have been confirmed. In a somewhat similar situation it was so held by this court in Cumberland Lumber Co. v. Tunis Lumber Co., 4 Cir., 171 F. 352, 357, where it was said:

"In a judicial sale, the court, acting through its duly constituted agency, becomes a vendor, and whilst the court may not be considered a guarantor of title, yet in no case should the court selling real property permit the title of the purchaser to be beclouded by reason of irregularity, defect, or illegality, in the proceeding under which the sale is made."

Furthermore, the statute very definitely announces the policy of the law that federal judicial sales should be made only in accordance with the requirements of the statute, and it is the duty of the courts to enforce the statutory mandate when the point is directly and properly presented, because, as was said in the Cumberland Case:

"It is clear that the prime object Congress had in mind was to require real property sold under the orders and decrees of the United States courts to be disposed of at public sale."

Not every minor departure from strict compliance with the statute where no prejudice has thereby resulted to the objecting party, will require setting a sale aside, but in this case, in our opinion, there was no compliance with the statute. Bovay v. Townsend, 8 Cir., 78 F.2d 343, 347.

It results, therefore, that the decree appealed from must be

Reversed.

---

[3] In Cumberland Lumber Co. v. Tunis Lumber Co., 4 Cir., 171 F. 352; and In re Britannia Mining Co., D.C.Wis., 197 F. 459, irregularities in the sale were said to make it void; Wilson v. Northwestern Mut. Life Ins. Co., 8 Cir., 65 F. 38; and MacKinnon v. American Agar Co., 9 Cir., 73 F.2d 835 tend to like effect; while in Lansburgh v. McCormick, 4 Cir., 224 F. 874; Walker v. Stuart, D.C.Md., 261 F. 427; Godchaux v. Morris, 5 Cir., 121 F. 482, and National Nickel Co. v. Nevada Nickel Syndicate, 9 Cir., 112 F. 44, and Nevada Nickel Syndicate v. Nat. Nickel Co., C.C., 103 F. 391, other irregularities were treated as rendering the sale voidable only.